PRECISION FABRICATORS, Inc., v. NA-
TIONAL LABOR RELATIONS BOARD.

No. 271, Docket 22653.

United States Court of Appeals
Second Circuit.

Argued May 13, 1953.

Decided June 22, 1953.

568

Nixon, Hargrave, Devans & Dey, Rochester, N.Y., Arthur L. Stern and William B. Lee, Jr., Rochester, N.Y., of counsel, for petitioner.

George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel; Samuel M. Singer and Melvin Spaeth, Washington, D. C., for respondent.

Before SWAN, Chief Judge, and L. HAND and FRANK, Circuit Judges.

SWAN, Chief Judge.

This is a petition by an employer to set aside an order of the Board which directs the petitioner to cease and desist from certain unfair labor practices and to offer reinstatement with back pay to an employee who was discharged, as the Board found, because of labor union activities. The Board's answer to the petition requests enforcement of its order.

The petitioner's brief states that the following issues are raised: (1) whether petitioner violated section 8(a) (3) of the Act,

29 U.S.C.A. § 158(a) (3), by discharging Joseph Petti; (2) whether petitioner violated section 8(a) (1), 29 U.S.C.A. § 158(a) (1); (3) whether the Board's proceeding was brought in good faith; and (4) whether so much of the order as directs the petitioner to cease and desist from "in any other manner" violating the Act is too broad.

■ The first question is whether Joseph Petti, at the time of his discharge was a "supervisor" as defined in the Act.[1] Section 2(3), 29 U.S.C.A. § 152(3), excludes from the definition of "employee" any individual employed as a "supervisor." The question is essentially one of fact, the answer to which must turn on what powers Petti was authorized to exercise. He was employed in the steel rule die department of the employer's plant from March 1947 until his discharge on August 22, 1951. He testified that at least 80% of his time was spent in actually operating machines. The petitioner contends that in addition to operating machines Petti had the supervisory duty to "assign" the work to be done by the other employees in the department. Mr. Bishop, the production manager, testified that he would give Petti a "production list" and "orders" from one to three times a week. The list would contain "the customers' names, the parts that were to be run, and what date was on the schedule that we had to meet to satisfy the customer." Petti himself testified "Everything that I did or the employees was [sic] supposed to do, I did by Mr. Bishop's information to me." The Trial Examiner on the entire record found "that though Petti may have assigned work to other employees, whatever authority he exercised was of a routine nature pursuant to Bishop's direction and that he was not a supervisor within the meaning of the Act." We agree with this conclusion. Petti did no more than to keep all hands busy on the work given him

1. 29 U.S.C.A. § 152(11):
"The term 'supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust * * * grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."

by Mr. Bishop. When an employee finished a job, she would ask Petti what to do next.[2] We will assume that he was the room "boss" or "leadman," but the discretion given him appears to be "routine" in the natural sense of that word. As Judge Magruder said in National Labor Relations Board v. Quincy Steel Cast Co., 1 Cir., 200 F.2d 293, 296: "The legislative history of § 2(11) tends to support the Board's view that certain employees with minor supervisory duties, such as straw bosses and leadmen, were not intended to be excluded from the coverage of the Act." [3]

The petitioner argues that Petti also had authority to recommend the discharge of employees and exercised it in two instances. Petti denied making such recommendations and the Trial Examiner gave credence to his denials. When a finding of fact turns upon the Examiner's evaluation of the credibility of witnesses who appeared before him, this court cannot say that the finding is unsupported by the record, merely because the Examiner has believed one witness rather than another. National Labor R. Board v. Dinion Coal Co., 2 Cir., 201 F.2d 484, 487.

It is next contended that even if Petti was not a supervisor, the Examiner's finding that he was discharged for labor union activity is not supportable. The principle to which we have just referred with respect to the credibility of witnesses is also applicable here. It will suffice to say that on the whole record there was ample evidence to support the finding that Petti's discharge violated § 8(a) (3).

Nor is it necessary to detail the evidence upon which was based the Board's finding that § 8(a) (1) of the Act was violated. There was testimony which the Examiner credited that the petitioner's president interrogated some of the employees about the union and threatened to "close the place" if the union should get in. Such conduct is not within the privilege conferred by § 8(c), 29 U.S.C.A. § 158(c).

The contention that the Board's complaint should be dismissed because it was not brought in good faith is so lacking in merit as to require no discussion.

Finally it is urged, in reliance upon National Labor Relations Board v. Express Publishing Co., 312 U.S. 426, 61 S.Ct. 693, 85 L.Ed. 930 and May Department Stores Co. v. National Labor Relations Board, 326 U.S. 376, 66 S.Ct. 203, 90 L.Ed. 145, that paragraph (c) of the cease and desist order is too broad because it goes beyond those acts of violation specifically found to have occurred.[4] The Board adopted verbatim the Examiner's recommendation. If the petitioner did not raise before the Board objection to this paragraph, he apparently cannot raise it before the court.[5] But assuming we may consider it, we think the petitioner's past conduct was such as to warrant a broad prohibition.[6]

The petition is dismissed, and the Board's request for an enforcement order is granted.

2. See testimony of Doris Davis at folios 583–5 of Petitioner's Appendix.

3. See also National Labor Relations Board v. North Carolina Granite Corp., 4 Cir., 201 F.2d 469.

4. Paragraph 1(c) reads as follows:
"In any other manner interfering with, restraining, or coercing its employees in the exercise of their right to self-organization, to form labor organizations, to join or assist International Brotherhood of Paper Makers of America, A. F. of L., or any other labor organization, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and to refrain from any or all of such activities, except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in Section 8(a) (3) of the Act."

5. See National Labor Relations Board v. Cheney California Lumber Co., 327 U.S. 385, 388, 66 S.Ct. 553, 90 L.Ed. 739; May Department Stores Co. v. National Labor Relations Board, 326 U.S. 376, 386, note 5, 66 S.Ct. 203, 90 L.Ed. 145; National Labor Relations Board v. Pugh & Barr, Inc., 4 Cir., 194 F.2d 217, 220.

6. See National Labor Relations Board v. Charles R. Krimm Lumber Co., 2 Cir., 203 F.2d 194, 196.