**POULTRY ENTERPRISES, Inc.,**

v.

**NATIONAL LABOR RELATIONS BOARD.**

No. 14892.

United States Court of Appeals, Fifth Circuit.

Nov. 24, 1954.

A. C. Wheeler, C. J. Thurmond, Wheeler, Robinson & Thurmond, Emory F. Robinson, C. D. Stewart, Gainesville, Ga., for petitioner.

Frank E. Hamilton, Jr., N.L.R.B., Atlanta, Ga., A. Norman Somers, Asst. Gen. Counsel, David P. Findling, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Washington, D. C., George J. Bott, Fannie M. Boyls, John Francis Lawless, Attys., National Labor Relations Board, Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and RIVES and TUTTLE, Circuit Judges.

TUTTLE, Circuit Judge.

This case is before the Court upon a petition by Poultry Enterprises, Inc., to review an order of the National Labor Relations Board issued against the petitioner July 13, 1953. The principal issue raised is whether there is substantial evidence on the record considered as a whole to support the Board's finding that James Farmer was a supervisor employed by petitioner, so as to make petitioner responsible for his acts in soliciting other employees' withdrawals from a union in violation of Sec. 8(a) (1) of the Labor-Management Relations Act of 1947, 29 U.S.C.A. § 158(a) (1), 29 U.S.C.A. § 160(e, f).

The evidence on the record is undisputed that during working hours Farmer openly solicited certain employees to sign an anti-union petition revoking the union's authority to represent them; that he explained to some of the employees that the purpose of the petition was "to kill the union"; and that he took a number of employees to the office of a lawyer, who was not counsel for nor connected with the petitioner, in order that they might sign the petition there. Relative to Farmer's capacity in petitioner's plant, the evidence showed that his primary duty was to maintain the petitioner's trucks and machinery. He performed other manual work wherever needed in the plant, such as loading trucks and packing chickens. Farmer's rate of pay was 80 cents an hour, the same as that of rank and file employees. There was no evidence, nor indeed any contention, that he had the power to hire and fire or effectively to recommend such action. There was evidence that he did transfer workers from place to place on the production line, told workers "what to do" (judging from context, this evidently meant only that he assigned them to positions on the line, and not that he directed their activities otherwise), on one occasion excused a worker's absence, and on one occasion reprimanded an employee for poor performance. There was also testimony by petitioner's foreman who testified he spent 99% of his own time supervising the operation, and its manager that Farmer had none of the supervisory powers set out in the statutory definition of "Supervisor." [1] The testimony indicated that assigning workers to places on the line was routine, the workers usually taking their places automatically. The Board's conclusion that Farmer exercised independent judgment in making such assignments is contrary to Nix's and Stewart's testimony, is not supported by any direct evidence, and necessarily rests upon an inference from (1) the circumstance that the

---

1. 29 U.S.C.A. § 152(11): "The term 'supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."

plant had 140-odd production employees and only one person (Nix) hired as foreman; and (2) the statement by Witness Hulsey that Nix told her once that Farmer would make a good boss and that Nix would stand behind him in anything he said. Nix denied making such a statement, and it is clear that the majority of the Board, in finding petitioner guilty of an unfair labor practice, relied mainly on the ratio between supervisors and production employees to infer that Farmer's duties involved independent judgment and were not simply routine. See CCH Labor Law Reporter ¶12633, and the dissenting opinion of Member Peterson of the Board, where he said:

"* * * while I agree that the ratio between supervisory and non-supervisory employees may be some evidence as to whether or not an individual is a supervisor, I am not entirely convinced that this factor is sufficient * * * to establish that Farmer was a supervisor within the meaning of the Act."

It is difficult to understand the basis of the Trial Examiner's different treatment of two types of evidence which were introduced on behalf of the General Counsel, relating to Farmer and relating to Flossie Howard. He found that Farmer was a supervisory employee but found that Howard was not.

The only affirmative evidence of any recognition by the management of Farmer's supervisory status was in the testimony of Louise Hulsey, in which she testified that Mr. Nix had told her that "James [Farmer] was going to make a good boss and that he would stand behind him in anything he did."

The following testimony was then adduced:

"Q. When was that? A. I don't remember exactly when it was.

"Q. About how long before you left the employment of the Company? A. I don't remember that."

This witness had worked for petitioner on two different occasions and there was no evidence which purported to connect the alleged conversation with the time of Farmer's activity in 1952. Although there was no other evidence as to when this purported conversation took place (Nix denied it) the Trial Examiner referred to the evidence in his tentative findings as being of probative value.

On the other hand, on the issue of whether Mrs. Howard was a supervisory employee, the Examiner stated: "Though Betty L. Dean (Talton) testified that Howard frequently placed employees at work and shifted them from job to job, her testimony related to a period outside that covered by the present complaint, since Dean had left respondent's employ in July, 1951."

The sum of it is that the Trial Examiner relied on evidence lacking the essential element of connection in point of time with the acts complained of (July 15th to August 15, 1952) in the case of Farmer; whereas in the case of Howard the Examiner rejected positive testimony of her alleged supervisory activities because the testimony lacked the element of connection with the time of the acts complained of.

The other type of evidence which was treated with equal inconsistency by the Examiner was the matter of rank and file membership in the union. It was a matter of record that Farmer was a rank and file employee member of the bargaining unit. This fact was ignored by the Examiner. In dealing with Howard's status, however, the Examiner said:

"It is also of significance that Howard testified as a witness for the General Counsel at the earlier hearing in April, 1952, and that her testimony then indicated that she was only a rank and file employee."

The utter inconsistency of the treatment of these facts by the Examiner is a circumstance for this Court to consider when it seeks to find whether there is substantial evidence on the rec-

ord as a whole to support the findings of the Board.

In applying the statutory definition of supervisor to Farmer's activities to determine whether he was a supervisor within the Act's meaning, it is appropriate to consider first the legislative history of this part of the Act. The Senate Committee Report stated with respect thereto, Sen.Rep. 105, 80th Cong., p. 4, CCH Labor Law Reporter ¶3520.01:

"The committee has not been unmindful of the fact that certain employees with minor supervisory duties have problems which may justify their inclusion in the act. It has therefore distinguished between straw bosses, leadmen, set-up men, and other minor supervisory employees, on the one hand, and the supervisor vested with such genuine management prerogatives as the right to hire or fire, discipline, or make effective recommendations with respect to such action. In other words the committee has adopted the test which the Board itself has made in numerous cases when it has permitted certain categories of supervisory employees to be included in the same bargaining unit with the rank and file."

The Fifth Circuit has considered the question in N.L.R.B. v. Stewart, 5 Cir., 207 F.2d 8, 10. In that case we enforced a Board order, approving in doing so a bargaining unit including a temporary substitute for a sick foreman. We held: "Such occasional performance of supervisory duties does not make an employee a supervisor within the meaning of the Act." Numerous Board rulings are in accord. Southshore Packing Corp., 73 N.L.R.B. 1116; Todd Shipyards Corp., 80 N.L.R.B. 382; Coca-Cola Bottling Co. of Tulsa, 85 N.L.R.B. 606. In Lockheed Aircraft Corp., 107 N.L.R.B. No. 122, the Board ruled that sporadic exercise of *some* supervisory authority, but not the full duties and responsibilities of the regular supervisor, during the latter's absence, did not constitute one a supervisor. Cf. Iowa Packing Co., 11 N.L.R.B. 986, which held that gangleaders having no authority to hire and fire *were* supervisors, where they take charge of subordinates when the foreman was absent and have authority to give directions and orders. It may be that the distinction is one of degree or of regularity of exercise of such powers. In a recent decision, the Board has gone so far as to hold that a secretary who used considerable discretion and independent judgment in assigning engineers when her boss was on vacation or ill, was *not* a supervisor. American Broadcasting-Paramount Theaters, Inc., 107 N.L.R.B. No. 20.

Meier Elec. & Mach. Co., Inc., 107 N.L.R.B. No. 43, a representation case, involved persons with duties fairly similar to those said to have been exercised by Farmer in the instant case. In that case an employee was held not a supervisor who made routine work assignments, was in routine direction of workers not requiring independent judgment, and sporadically substituted for a foreman.

In N.L.R.B. v. Scullin Steel Co., 161 F.2d 143, the Eighth Circuit held that the company was not responsible for remarks as to labor matters by minor supervisors who had no real supervisory authority, who were included among the employees eligible to vote in an election conducted in a unit of non-supervisory employees, and who were actually only key men not entitled to any additional compensation. The Court modified the Board order to delete anything relating to these employees' acts or remarks.

Clinton Const. Co., 107 N.L.R.B. No. 196 held that an employee who (1) had authority to transfer men during the early morning shift, (2) had authority to report to superintendent delinquencies, and (3) was the only person present for two hours each day to see that the work was properly done, such work being routine in nature, was not a supervisor.

Precision Fabricators, Inc., v. N.L.R.B., 2 Cir., 204 F.2d 567, held that

a "room boss" who made routine work assignments so as to keep everyone busy, did not in so doing have independent judgment and was not a supervisor.

We believe that according to the objective standards adopted by the foregoing cases,[2] namely, the nature of the duties performed, and coupled therewith the exercise of independent judgment by the employee, there is no substantial evidence in the record considered as a whole to support the Board's finding that Farmer was a supervisor. Although the statute states various sorts of supervisory authority coupled by the disjunctive *(or)*, it states the requirement of independence of judgment in the conjunctive (i. e., *in connection*) with what goes before. The only evidence in the record implying that Farmer may have had independent judgment is Hulsey's vague recollection of Nix's statement, which certainly was not remembered by Hulsey in temporal connection with Farmer's solicitations to sign the petition; and the "ratio" factor. There is positive testimony by Nix and Stewart that Farmer had no authority to exercise independent judgment. We believe that this did not constitute substantial evidence of this necessary element. It is not contrary to common sense or experience to suppose that Nix might have supervised this highly routine and automatic chicken packing operation, by moving around the plant frequently and by delegating some *routine* supervisory duties to Farmer and Howard, and in other cases using them as messengers. In any event Nix and Stewart swore that this was the case; certainly an

inference based on the Examiner's doubt that this could be so, should not be considered "substantial evidence" by this Court.[3] Nor can Nix's controverted and ambiguous statement (Farmer "was going to" make a good boss), without its relevance in point of time being shown, be considered substantial evidence.

Therefore, enforcement of the Board's order is denied.

2. We recognize that in appropriate cases the employer might be estopped to deny the supervisory capacity of a non-supervisory employee. See 29 U.S.C.A. § 152 (13); Wiltse, d.b.a. Ann Arbor Press, 85 N.L.R.B. 58. However, there is nothing in the record here to show there was any reasonable reliance by the employees upon the ostensible existence of any *really supervisory* authority of Farmer and so no estoppel is present. In N. L. R. B. v. Laister-Kauffmann Aircraft Corp., 8 Cir., 144 F.2d 9, and Allen-Morrison Sign Co., 79 N.L.R.B. 904, some indicia of actual

supervisory authority were present as well as elements of estoppel. Therefore, there is nothing in these cases contrary to our decision herein.

3. Several other cases decided by the Board have held that a high ratio of employees to supervisors is strong indication of a supervisory status of borderline individuals, but this reason does not appear to have been involved in any court cases. New York City Omnibus Corp., 104 N.L. R.B. No. 83; Ideal Roller & Mfg. Corp., 104 N.L.R.B. No. 116.