**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**v.**

**The BAMA COMPANY, Respondent.**

**No. 21715.**

United States Court of Appeals
Fifth Circuit.

Nov. 18, 1965.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Bernard M. Dworski, Atty., N. L. R. B., Arnold Ordman, Gen. Counsel, Melvin Pollack, Richard P. Lawlor, Attys., N. L. R. B., Washington, D. C., for petitioner.

Carlton Wilde, Richard A. Royds, Houston, Tex., for respondent, Bracewell, Reynolds & Patterson, Houston, Tex., of counsel.

Before HUTCHESON and COLEMAN, Circuit Judges, and MORGAN, District Judge.

HUTCHESON, Circuit Judge.

This matter is here on the petition of the National Labor Relations Board for enforcement of its decision and order,[1] 145 N.L.R.B. 1141, issued January 20, 1964. The Respondent's main argument is that the Board has not established by substantial evidence on the record considered as a whole[2] the unfair labor practices of which it found Respondent guilty. The Respondent also argues that the Board order is too broad and general on the facts of this case. We find against Respondent on both arguments.

Respondent is engaged in the production of peanut butter, preserves, jams, and jellies at its plant in Houston, Texas. The company is headed by Mr. Raymond Oeland, Sr., president; Mr. Raymond Oeland, Jr., secretary-treasurer; and Mr. George King, general manager. Under Mr. King are Chester Rains, plant superintendent, and John Gregory, traffic manager and head shipping clerk. There are approximately 37 employees on the production lines, 10 employees in the cooking department, and 4 employees in the maintenance department. Chester Rains supervises the production lines, cooking department, and maintenance department. Burtis Rains, Chester's brother, is a cook in the cooking department; Charles Loveless serves in the maintenance department.

In September, 1962, Amalgamated Meat Cutters and Butcher Workmen of North America, AFL-CIO, Local No. 103 [hereinafter called the Union] commenced a campaign to organize Respondent's production and maintenance employees. On October 4, the Union filed a representation petition and an election was scheduled for December 14.[3] During the time preceding the election Chester Rains, Burtis Rains, and Charles Loveless discussed the union with various employees and warned of the possible economic consequences of unionization. On November 15, Santos Valdez, an employee in the production department, was discharged. The Board concluded that Chester Rains, Burtis Rains, and Love-

1. Consolidated for hearing below were a complaint alleging the commission of unfair labor practices by Respondent and objections to the election conducted by the Board on Dec. 14, 1962. The Board found that Respondent had violated: Sec. 8(a)(1) of the National Labor Relations Act, 29 U.S.C.A. Sec. 158(a)(1) [hereinafter called the Act], by interfering with, restraining, and coercing employees in the exercise of their rights under the Act; and Secs. 8(a)(3) and (1) of the Act by discharging employee Valdez. The case was remanded for a revised tally in the election. The Board ordered the election set aside and a new election if the Union lost on the revised tally.

2. Sec. 10(e) of the Act states: "The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive." See Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

3. American Bakery and Confectionery Workers International Union, AFL-CIO, Local No. 163, intervened in the representation election. Since this union is not pertinent to this appeal, it is not discussed.

less[4] are "supervisors"[5] and that their statements violated Sec. 8(a) (1) of the Act by interfering with, restraining, or coercing employees in the exercise of their organizational rights. The real reason for Valdez' discharge was found to be his union activities; thus Respondent violated Secs. 8(a) (3) and (1) of the Act by discharging Valdez. The Board ordered Respondent: to cease and desist from the unfair labor practices found and from in any other manner infringing upon the statutory rights of its employees; to reinstate Valdez with back pay; and to post appropriate notices.

■ Respondent insists that substantial evidence on the record considered as a whole does not support the Board's conclusion regarding the supervisory status of Burtis Rains and Charles Loveless. That Congress intended to distinguish between an individual who is merely a superior worker exercising the control of a skilled workman over less capable employees and an individual who shares the powers of management is abundantly clear. 1 Legislative History of the Labor Management Relations Act 410 (1948); NLRB v. Griggs Equip., Inc., 307 F.2d 275, 279 (5th Cir. 1962); NLRB v. Southern Airways Co., 290 F.2d 519, 523 (5th Cir. 1961); Poultry Enterprises v. NLRB, 216 F.2d 798, 801–802 (5th Cir. 1954); NLRB v. Quincy Steel Casting Co., 200 F.2d 293 (1st Cir. 1952). Whether an employee is a supervisor, who possesses genuine management prerogatives and exercises independence of judgment is essentially a question of fact. NLRB v. Florida Agricultural Supply Co., 328 F.2d 989, 991 (5th Cir. 1964); NLRB v. Griggs Equip.,

Inc., supra; NLRB v. Southern Bleachery & Print Works, Inc., 257 F.2d 235, 239 (4th Cir. 1958), cert. denied, 359 U.S. 911, 79 S.Ct. 588, 3 L.Ed.2d 575 (1959); Precision Fabricators, Inc. v. NLRB, 204 F.2d 567, 568 (2nd Cir. 1953). "[T]he gradations of authority 'responsibly to direct' the work of others from that of general manager or other top executive to 'straw boss' are so infinite and subtle that of necessity a large measure of informed discretion is involved in the exercise by the Board of its primary function to determine those who as a practical matter fall within the statutory definition of a 'supervisor'." NLRB v. Swift & Co., 292 F.2d 561, 563 (1st Cir. 1961).

■ Burtis Rains assigns work to other cooks, directs them in their work, grants them permission to work through lunch hour, keeps records for the cooking department, is consulted regarding the competency of applicants for cooking jobs, and receives substantially higher wages than other cooks. These facts provide substantial evidence from which to conclude that Burtis is a supervisor.[6] See West Penn Power Co. v. NLRB, 337 F.2d 993 (3d Cir. 1964); NLRB v. Charley Toppino & Sons, Inc., 332 F.2d 85 (5th Cir. 1964) (per curiam); Keener Rubber, Inc. v. NLRB, 326 F.2d 968 (6th Cir. 1964), cert. denied, 377 U.S. 934, 84 S.Ct. 1337, 12 L.Ed.2d 297 (1964); NLRB v. Texas Bolt Co., 313 F.2d 761 (5th Cir. 1963); NLRB v. Southern Airways Co., supra; NLRB v. Armstrong Tire & Rubber Co., 228 F.2d 159 (5th Cir. 1955).

The Trial Examiner found that Charles Loveless is not a supervisor because any

---

4. The Trial Examiner held that Loveless is not a "supervisor" as defined in the Act because any supervisory authority exercised by him is irregular and sporadic in nature. The Board reversed this holding, stating that Loveless had been delegated authority responsibly to direct other employees.

5. Sec. 2(11) of the Act defines "supervisor" as "any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote,

discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."

6. See Daykin, "Legal Meaning of 'Supervisor' Under Taft-Hartley", 13 Labor L.J. 130, 132–35 (1963).

supervisory authority exercised by him "is irregular and sporadic in nature." [7] The Board held this conclusion unwarranted and found Loveless is a supervisor.[8] As we find the conduct of Chester and Burtis Rains sufficient to support the Board's determination of a Section 8(a)(1) violation, the resolution of this issue is unnecessary.

■ The Board found that Respondent violated Sec. 8(a)(1) of the Act by the statements made by supervisors Chester Rains, Burtis Rains, and Charles Loveless.[9] On several occasions plant superintendent Chester Rains told production employees that unionization would probably result in loss of Christmas bonus and vacation pay. Similar statements were made by Burtis Rains. These remarks, threatening the loss of benefits, are substantial evidence from which to conclude that Respondent interfered with, restrained, or coerced its employees in violation of Sec. 8(a)(1) of the Act. See Florence Printing Co. v. NLRB, 333 F.2d 289 (4th Cir. 1964); NLRB v. Harbison-Fischer Mfg. Co., 304 F.2d 738 (5th Cir. 1962); NLRB v. Dell, 283 F.2d 733 (5th Cir. 1960); NLRB v. Dan River Mills, Inc., 274 F.2d 381 (5th Cir. 1960); NLRB v. Coats &

Clark, Inc., 241 F.2d 556 (5th Cir. 1957); NLRB v. Armstrong Tire & Rubber Co., supra; NLRB v. Dallas Concrete Co., 212 F.2d 98 (5th Cir. 1954).

■ The Board also found Respondent violated Secs. 8(a)(3) and (1) of the Act in discharging Santos Valdez. Valdez was active in the organization drive, which Respondent knew.[10] The discharge of Valdez was allegedly because of his arrest in the plant for unpaid traffic tickets. Other employees had been permitted to return to work after arrests in the plant. This, coupled with Respondent's open animosity to unionization, provide substantial evidence from which to conclude that the real reason for Valdez' discharge was his union activities. See NLRB v. Park Edge Sheridan Meats, Inc., 341 F.2d 725 (2d Cir. 1965); NLRB v. Dan River Mills, Inc., supra.

■■ Respondent suggests the Board order is too broad and general and should be restricted to the facts of this case. The propriety of the Board order depends on the facts in each particular case. In view of the conduct of Respondent, we cannot say that the Board was not warranted in invoking this broad form of order on the basis of an attitude of

7. Respondent operated a night shift on three separate occasions, during which Loveless was "left on duty to look after things". Loveless was also left in charge when Chester Rains was out of the plant because of illness or while on vacation. At these times Loveless was given specific instructions regarding his duties and was directed to contact his superiors if anything unusual arose. On these facts the Examiner held that supervisory authority exercised by Loveless during these temporary periods did not bring him within the statutory definition. See NLRB v. Lindsay Newspapers, Inc., 315 F.2d 709 (5th Cir. 1963); Poultry Enterprises v. NLRB, 216 F.2d 798 (5th Cir. 1954); NLRB v. Stewart, 207 F.2d 8 (5th Cir. 1953). Cf. West Penn Power Co. v. NLRB, 337 F.2d 993 (3d Cir. 1964); NLRB v. Florida Agricultural Supply Co., 328 F.2d 989 (5th Cir. 1964).

8. Since the Board reversed the Examiner, we note the Supreme Court's directive in Universal Camera Corp. v. NLRB, 340

U.S. 474, 496, 71 S.Ct. 456, 95 L.Ed. 456 (1951). To the same effect see Northern Va. Steel Corp. v. NLRB, 300 F.2d 168, 172 (4th Cir. 1962); NLRB v. Dell, 283 F.2d 733, 735 (5th Cir. 1960). Our disposition of the issue precludes our considering the effects of this conflict.

9. Respondent is not accountable for the remarks of employees who are not "supervisors". NLRB v. Armstrong Tire & Rubber Co., 228 F.2d 159, 161 (5th Cir. 1955). Cf. Poultry Enterprises v. NLRB, 216 F.2d 798, 799 (5th Cir. 1954). Since we have not passed on the supervisory status of Loveless, we will not consider his conduct in reviewing the Board's determination of a Section 8(a)(1) violation.

10. Substantial evidence supports the Board's finding that Chester Rains and Charles Loveless were both aware of Valdez' activities. Only for the former is this knowledge imputed to Respondent. See note 9 supra.

opposition to the purposes of the Act. NLRB v. Express Publishing Co., 312 U.S. 426, 437, 61 S.Ct. 693, 85 L.Ed. 930 (1941); NLRB v. Moore Dry Kiln Co., 320 F.2d 30, 34 (5th Cir. 1963); Allegheny Pepsi-Cola Bottling Co. v. NLRB, 312 F.2d 529, 532 (3d Cir. 1962).

The order of the Board is enforced.