**TRAILMOBILE DIVISION, PULLMAN INCORPORATED, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 23271.**

United States Court of Appeals
Fifth Circuit.

June 21, 1967.

---

Charles M. Lanier, New Orleans, La., Hulse Hays, Jr., John R. Phillips, Cincinnati, Ohio, for petitioner, Taft, Stettinius & Hollister, Cincinnati, Ohio, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., of counsel.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Paul J. Spielberg, Atty., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, George B. Driesen, Atty., N. L. R. B., Washington, D. C., for respondent.

James E. Youngdahl, Little Rock, Ark., for intervenor, McMath, Leatherman, Woods & Youngdahl, Little Rock, Ark., of counsel.

Before HUTCHESON, THORNBERRY and DYER, Circuit Judges.

HUTCHESON, Circuit Judge.

This matter is here on a petition by Trailmobile Division, Pullman, Inc., to review and set aside an order of the Board, 156 N.L.R.B. No. 55. Trailmobile, found guilty of unfair labor practices for refusal to bargain, was ordered to bargain with the Union.[1] Trailmobile admits refusal to bargain, but insists that the certification of the Union after a Board-conducted election was errone-ous. The Board, in its answer to the petition for review, requests enforcement of its order.

Trailmobile manufactures commercial truck trailers at its plant in Longview, Texas. On September 3, 1964, the Board conducted a representation election among Trailmobile's production and maintenance employees. The Union challenged the voting eligibility of sixteen persons, a number sufficient to affect the result of the election.[2] No exception was taken to the Board's ruling which rejected two of the challenges. Since the Union won the election by three votes and those two ballots alone would not have affected the result of the election, they were left unopened.

We are required to consider the eligibility of the remaining 14 challenged voters.[3] The Union contends that 13 leadmen were ineligible to vote on the ground that they were supervisors, not employees; and it challenges Lenzo Higginbotham's voting eligibility on the ground that he was not an employee of Trailmobile on the date of the election. After a hearing, the Hearing Officer recommended that the challenges to the ballots of the leadmen be sustained but that Higginbotham's ballot be counted. The Board sustained the challenges to all 14 ballots, thus upholding the Hearing Officer with regard to the leadmen but reversing him with regard to Higginbotham. Accordingly, the Union was certified as the exclusive collective bargaining representative of Trailmobile's production and maintenance employees. Refusing to recognize the Union as such and to bargain with it, Trailmobile was charged with violations of Section 8(a) (1), (5) of the Act. The parties waived a hearing before a trial examiner and

1. United Automobile, Aerospace & Agricultural Implement Workers (UAW), AFL–CIO.

2. Votes were cast as follows: for Union 171; against Union, 168. The 16 ballots challenged by the Union remain unopened and uncounted.

3. "The representation proceeding cannot come before us by direct review, but where unfair labor practice is charged for refusal to bargain, and the employer has refused to recognize the certification, the election proceeding is before the court for review. The representation case and the unfair labor practice case become as one and the complete record is fully reviewable." United States Rubber Co. v. NLRB, 373 F.2d 602, 604, n. 3 (5th Cir. 1967).

stipulated the record to be considered by the Board. On December 30, 1965, the Board held that Trailmobile had committed the unfair labor practices charged by refusing to bargain with the Union, and issued the order here for review.

■■ We deal first with the question whether the leadmen were supervisors.[4] The Board's conclusion must be sustained if it is supported by substantial evidence on the record considered as a whole. Section 10(e), 29 U.S.C. Sec. 160(e). Whether an individual is a supervisor in that he shares in the power of management must be determined on the facts of each case. See NLRB v. Bama Co., 353 F.2d 320, 322 (5th Cir. 1965); NLRB v. Schill Steel Prods., Inc., 340 F.2d 568, 571 (5th Cir. 1965); NLRB v. Griggs Equipment, Inc., 307 F.2d 275, 279 (5th Cir. 1962). In making such determinations which involve the consideration of subtle gradations of authority, the Board is accorded considerable discretion. See NLRB v. Belcher Towing Co., 284 F.2d 118, 120 (5th Cir. 1960); NLRB v. Swift & Co., 292 F.2d 561, 563 (1st Cir. 1961).

■ Trailmobile personnel work in a single building having no dividers. There are 12 foremen (who clearly are supervisors), the 13 leadmen, and 339 rank-and-file employees. We treat the leadmen as a group as it appears that their authority was approximately the same. About half of the leadmen worked under a foreman, while the others did not. The leadmen working under a foreman arrived at work a half-hour early to discuss with the foreman the work that was to be done on that shift. There is evidence that at times the leadmen assigned work to the employees at the beginning of a shift; foremen also did this when present. One of the functions of leadmen was to keep production running smoothly; thus, whenever necessary, they reassigned employees to different jobs. In a few situations leadmen sought to maintain discipline by reprimanding employees. Some recommendations by leadmen that employees be transferred or discharged proved effective. When overtime work was available, the leadmen selected the employee to perform it. We conclude that these facts provide substantial evidence from which the Board in its discretion could have determined that these leadmen used the degree of independent judgment necessary to make them supervisors. See e. g., NLRB v. Gary Aircraft Corp., 368 F.2d 223 (5th Cir. 1966); NLRB v. Big Three Welding Equipment Co., 359 F.2d 77, 80–81 (5th Cir. 1966); NLRB v. Bama Co., supra, 353 F.2d at 322; NLRB v. Schill Steel Prods., Inc., supra, 340 F.2d at 571; NLRB v. Charley Toppino & Sons, Inc., 332 F.2d 85 (5th Cir. 1964) (per curiam).[5]

We cannot, however, agree with the Board's decision as to Higginbotham's eligibility. About six weeks prior to the election held on September 3, 1964, Higginbotham applied for a leave of absence for the stated purpose of working on some trucks he owned privately. He received a 30 day leave of absence effective July 21. Shortly after the leave commenced, he began driving his trucks for H. E. Spahn & Co. as a hauler. Near the end of the leave, Higginbotham requested that it be extended. His request was granted, the leave being extended 30 days until September 21. He voted in the election on September 3. He re-

---

4. Section 2(11) of the Act, 29 U.S.C. Sec. 152(11) provides:

"The term 'supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct them or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."

5. Compare NLRB v. Lindsay Newspapers, Inc., 315 F.2d 709 (5th Cir. 1963); NLRB v. Griggs Equipment, Inc., 307 F.2d 275 (5th Cir. 1962); Poultry Enterprises, Inc. v. NLRB, 216 F.2d 798 (5th Cir. 1954).

turned to work at the end of the extended leave, worked one day, and quit.

There is testimony, credited by the Hearing Officer, to the effect that prior to the election Higginbotham had told another employee that he had decided not to resume employment at Trailmobile after his leave of absence since he could make more money driving his truck. To be eligible to vote in a representation election, a person must be an employee on both the eligibility date and the election date. Declaring that evidence pertaining to Higginbotham's subjective intent while on leave of absence was not controlling on the question whether he was an employee on the critical dates, the Hearing Officer held that Higginbotham continued as an employee notwithstanding his hauling work and the testimony that he had decided to quit. In reversing the Hearing Officer, the Board concluded that Higginbotham in fact had abandoned his employment with Trailmobile prior to the election.

We find that the Board failed to apply the correct standard by which the voting eligibility of employees on leave of absence is determined. In order to avoid the obvious difficulties inherent in ascertaining a person's past subjective intent, an employee on leave of absence generally continues to be regarded as an employee unless it can be established by overt action or objective evidence that the employment relationship has been severed. See Octarion Listener Corp., 124 N.L.R.B. 880, 881 (1959); Sylvania Elec. Prods., Inc., 119 N.L.R.B. 824, 832 (1957). See also Pacific Tile and Porcelain Co., 137 N.L.R.B. 1358, 1359 (1962) (employees on strike). The record does not reveal this kind of evidence from which the Board could find that Higginbotham had abandoned his job and broken off the employment relationship. The company had granted Higginbotham a leave of absence during which he was kept on the company's employee rolls. It is not disputed that he held his seniority status in the production and maintenance unit. Furthermore, he continued to participate in the company's retirement plan.

The testimony of another employee that Higginbotham had made a decision to quit is evidence of Higginbotham's subjective intent and cannot overcome the abundant objective evidence pointing to the contrary conclusion of continued employment. Neither does acceptance of other employment of itself manifest abandonment of the job from which leave of absence is taken. *Pacific Tile and Porcelain Co.*, supra.

Bear Brand Hosiery Co., 100 N.L.R.B. 1355 (1952), is strikingly similar on its facts to the case at bar. In *Bear Brand*, the employee was granted a two-week leave of absence due to nervousness. Her condition continued and she received another two weeks leave. As in the case at bar, she took other employment, working fulltime in a restaurant. Also as in the case at bar, there was testimony that before the election she had told other persons she had decided to quit. However, she voted in the election and returned to work at the end of her leave. After working about one and one-half hours, she resigned, complaining of nervousness. The trial examiner maintained that her statements prior to election that she had quit were not conclusive on the issue of eligibility. In finding that she was employed on the election date, the examiner stressed that the employer knew only that the employee was on leave and planned to return to work. In upholding that finding, the Board emphasized objective evidence consisting of the company records which reflected her status as an employee on temporary leave.

In the proceedings below, the trial examiner considered *Bear Brand* to be squarely in point. The Board, to the contrary, distinguished the case on the ground that there the employee had manifested an intention to return to work. We cannot agree that such an intention, if present, was regarded as critical. The trial examiner expressly discounted the importance of subjective intent and the Board merely indicated that it was particularly impressed with the employee's status on the company's records.

We conclude that a proper application of the relevant rule to the facts surrounding Higginbotham's leave of absence result in the conclusion that Higginbotham continued in the employment of Trailmobile on the election date, and therefore was eligible to vote. The Union's challenge to his vote must be rejected. Since there is substantial evidence to support the Board's conclusion that the leadmen were supervisors, their ballots will not be counted. However, Higginbotham's ballot, added to the two which the Board has ruled eligible, could affect the result of the election. These three ballots must be opened and counted.

The order is set aside.