**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**DALTON SHEET METAL COMPANY, INC., Respondent.**

No. 72–1320.

United States Court of Appeals, Fifth Circuit.

Jan. 30, 1973.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Washington, D. C., Walter C. Phillips, Robert C. McDonald, Atlanta, Ga., for petitioner.

Robert L. Thompson, Lovic A. Brooks, Jr., Atlanta, Ga., for respondent.

Before TUTTLE, BELL and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

This suit was filed by National Labor Relations Board under section 10(e) of the National Labor Relations Act (29 U.S.C. § 151 et seq.) to enforce its order against Dalton Sheet Metal Company, Inc. for violation of sections 8(a)(5) and (1) of the Act in refusing to bargain with the Union (Sheet Metal Workers Local No. 185).

The violation proceedings grew out of a representation election which was won by the Union on a tally of 42 to 40 votes. The Company challenged a number of votes in the representation case, and when the Board denied the challenges, the Company declined to recognize the Union which had been certified by the Regional Director as the representative of the Company's employees. The Company refused to bargain, thus bringing about the unfair labor practice charges, since this was the only way in which the Company could seek review of the Board's decision in the representation case. See N. L. R. B. v. Smith Industries, Inc., 5 Cir., 1968, 403 F.2d 889, 891. Under the circumstances, therefore, we review as one both the representation case and the unfair labor practice case. See N. L. R. B. v. Ortronix, Inc., 5 Cir., 1967, 380 F.2d 737, 739.

On appeal the Company charges that two principal errors were committed by the Board. First, the Company asserts that the Board erred in refusing to count the ballots of striker replacements Fulton, Hendrix and King, who it contends were employed as permanent replacement employees prior to the voting eligibility cut-off date and on the date of the election. Second, the Company contends that the Board erred in refusing to sustain the challenges to the ballots of employees Parrish, Norris and Smith, who it contends voluntarily quit employment with the Company and were not employees on the day of the election. As a corollary to the second charge of error, the Company avers that the Board erred in granting summary judgment in connection with the evidence concerning the challenges to the ballots of Parrish, Norris and Smith, and that a hearing should have been held in regard to these challenges to make a determination of a substantial and material issue of fact as to whether these employees voluntarily quit their employment with the Company, and were ineligible to vote in the representation election.

On the question of the first error asserted by the Company, we sustain the Board's decision which upheld its Regional Director's ruling that the ballots of striker replacement employees Fulton, Hendrix and King should not be counted in the representation election. These three employees were hired prior to the eligibility date of October 18, 1970, but were instructed by the Company not to report for work until November 18, 1970, allegedly because of possible picket line violence. They were, therefore, not working on the eligibility date but were employed and working, however, on the date of the election on December 3, 1970.

The Board's well-settled, general rule is that an individual must be employed *and working* on the established eligibility date in order to be eligible to vote. See Ra-Rich Mfg. Corp., 120 NLRB 1444, 1447 (1958); Schick, Inc., 114 NLRB 931, 934 (1955); Barry Controls, Inc., 113 NLRB 26, 27–28 (1955). The Company complains that this rule, however, should not be applied by the Board to striker replacements so as to require that they must be both employed and working on the established eligibility date. The Company points to the Board decision in Tampa Sand & Material Co.,

129 NLRB 1273 (1961), where the Board held that permanent striker replacements were eligible to vote although not employed on the eligibility date. However, *Tampa Sand* is distinguishable from the present case because the strike began *after* the election was called and the replacements were employed after the eligibility deadline but before the election. *See also* Macy's Missouri-Kansas Division, 173 NLRB 1500, 1501 (1969); Macy's Missouri-Kansas Division v. N. L. R. B., 8 Cir., 1968, 389 F.2d 835, 842–845, which involved facts similar to those in *Tampa Sand*. Board counsel, therefore, emphasizes that these exceptions to the general policy pertaining to voter eligibility do not apply in this case because the strike occurred prior to the eligibility date rather than after, as in *Tampa Sand* and *Macy's Missouri-Kansas Division, supra*; that the Union was therefore not in a position to control eligibility by its timing of the strike as it was where the strike occurred after the eligibility date. The Board made its policy clear in this regard by its discussion in *Macy's Missouri-Kansas Division*, supra at 1501:

"In *Tampa Sand and Material Company*, [129 NLRB 1273] the Board made an exception to its general election eligibility rule—that an employee must have been employed both on the initial eligibility date and the date of the election to be eligible to vote in a Board election—by holding that permanent replacements for economic strikers may vote in an election *where a strike occurs after the direction of the election*. Subsequently, in *Greenspan Engraving Corporation*, [137 NLRB 1308] the Board, although adhering to the rule enunciated in *Tampa Sand*, limited *Tampa Sand* to its specific facts and held that permanent replacements hired for economic strikers after the eligibility date are not eligible to vote in an election *where the strike precedes the direction of election*. . . .

"In both *Tampa Sand* and *Greenspan*, the Board emphasized that the timing of the strike was the controlling factor in determining whether permanent replacements for economic strikers were entitled to vote in a representation election. As the Board stated in *Greenspan*: 'As the timing of the strike [is] peculiarly within the province of the union, rigid adherence by the Board to mechanical standards [the rule that for an employee to be eligible to vote, he must have been employed both on the eligibility date and the date of the election] without regard to the equities of the case would not [be] reasonable.' Accordingly, where, as in *Tampa Sand*, the union called the strike *after* the eligibility date, and it was therefore patently impossible for the employer to hire permanent replacements prior to the eligibility date, the Board held that the equities of the situation required that genuine permanent replacements hired after the eligibility date be entitled to vote. On the other hand, as in *Greenspan* where the union called the strike prior to the eligibility date, and the employer had the opportunity to hire permanent replacements prior to the eligibility date, the Board held that the equities of the situation did not require that such permanent replacements be entitled to vote but that the usual voting eligibility rules should be applicable."

The Company places strong reliance on the Second Circuit decision in H. & F. Binch Co. v. N. L. R. B., 2 Cir., 1972, 456 F.2d 357, in which that Court sustained a Board ruling which recognized the status as employees of striker replacements upon acceptance by them of vacant positions offered by their employer though the replacements had not actually started to work until after strikers applied for reinstatement. The Court held that actual arrival on the job would not be required for a striker replacement to acquire the status of an employee sufficient to oust the reinstatement of a striker, if an understanding had been reached that actual work would start at a reasonably early date. *Id.* at 362. The Court further held, "The standard established by the Board in earlier deci-

sions appears to have been that a replacement has been obtained if, but only if, both the employer and the replacement understand that the latter has accepted the vacant position before the replaced striker offered to return to work." *Id.* at 362. The recent case of L. E. M., Inc. d/b/a Southwest Engraving Co. and Towell Printing Co., 198 NLRB No. 99 (1972), cited by the Company, is to the same effect.

The holdings in H. & F. Binch and L. E. M., Inc., *supra*, do not, however, decide the issue here, for as the Board points out in its brief (p. 20), "the Board has never stated that mere achievement of such employee status makes one an eligible voter." The Board, in a supplemental memorandum to the Court, contends that "The purpose of the Board's rule that employees actually be working—or absent for specified reasons—on both the eligibility date and the date of the election is to make the identity of eligible voters quickly and easily ascertainable. That policy is operative whether the person who has agreed to come to work is a striker replacement or simply a new hire." Thus there is a difference between the Board's policy insofar as the status of striker replacements opposing strikers attempting reinstatement is concerned and its policy as to eligibility to vote of replacements.

We are not prepared to nullify the Board's policy on eligibility to vote which requires that striker replacements be both employed and working on the eligibility date since we recognize that "Congress has entrusted the Board with a wide degree of discretion in establishing the procedure and safeguards necessary to insure the fair and free choice of bargaining representatives by employees." N. L. R. B. v. A. J. Tower Co., 329 U.S. 324, 330, 67 S.Ct. 324, 328, 91 L.Ed. 322 (1946); Macy's Missouri-Kansas Division v. N. L. R. B., 8 Cir., 1968, 389 F.2d 835, 842. As the Supreme Court noted in N. L. R. B. v. A. J. Tower Co., *supra*, "The principle of majority rule, however, does not foreclose practical adjustments designed to protect the election machinery from the ever-present dangers of abuse and fraud." (*Id.*, 329 U.S. at 331, 67 S.Ct. at 328.)

We can see differences between new hire and striker replacements but not of sufficient substance to cause us to hold that the Board rule requiring both employment and actual working on the eligibility date shall not be applied uniformly both to new employees and replacements. If the Board policy disenfranchises replacements because of the requirement that they also be working on the eligibility date, it also disenfranchises new employees as well. In essence, we can discern no reason why a different rule should be applied to replacements (except in the limited *Tampa Sand* circumstances), than is applied to new employees.[1]

As to the Company's second principal assertion of error, the three employees, Parrish, Norris and Smith, alleged to have voluntarily abandoned employment with the Company prior to the eligibility date, we are unable to tell from the record, the case having been decided on summary judgment, whether their employment ceased voluntarily or not. The issue of fact is sharply contradicted and seriously disputed. The Company, on the one hand, contends that the employees quit their employment without

1. The Board's reasoning in Greenspan Engraving Corp., 137 NLRB 1308, 1311, is revealing in this regard:
"We are unable to see any reason why striker replacements hired after the eligibility date are entitled to more favored treatment than is accorded, when there is no strike, to regular employees hired during the comparable period. Surely striker replacements have no greater interest in expressing their desires as to representation than do such new employees. Yet it is an accepted rule that, where there is no strike, new permanent employees hired after the eligibility date are ineligible to vote, notwithstanding the fact that, to paraphrase the dissenting opinion herein, they 'are employees in fact, and will most likely continue in their employment after the election, [but] are being deprived of a right to express their voice in the election.'"

any expectancy of returning. The Board contends, to the contrary, that the facts developed by the Regional Director in his ex parte investigation show they were merely quitting for the time being, until the strike and confusion could subside, and that they had no intention of abandoning their jobs. The Company further asserts that the Regional Director's investigation could not effectively determine whether these employees intended to return to work after the strike and that only after a full hearing can this crucial issue of fact be resolved.

The question does not properly lend itself to disposition by summary judgment and a hearing should have been held by the Board to settle the issue. *See* N. L. R. B. v. Smith Industries, Inc., 5 Cir., 1968, 403 F.2d 889; N. L. R. B. v. Ortronix, Inc., 5 Cir., 1967, 380 F.2d 737.

Since the Union prevailed in the representation election by only two votes, resolution of this case cannot be finally made until the Board holds a full hearing on the eligibility of Parrish, Norris and Smith to vote in the election.

Remanded for further proceedings before the Board.