**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**NATIONAL MEDICAL HOSPITAL OF MODESTO, INC., d/b/a Doctors Hospital of Modesto, Respondent.**

No. 74–2636.

United States Court of Appeals, Ninth Circuit.

Nov. 26, 1975.

Rehearing and Rehearing En Banc Denied Feb. 10, 1976.

Marjorie Gofreed (argued), N. L. R. B., San Francisco, Cal., for petitioner.

James J. Meyers (argued), Littler, Mendelson & Fastiff, San Francisco, Cal., for respondent.

---

## OPINION

Before BROWNING and TRASK, Circuit Judges, and SWEIGERT,* District Judge.

## PER CURIAM.

The reasons for the Board's order are briefly but adequately stated in its decisions in this unfair labor practice proceeding (210 NLRB No. 117) and the underlying representation proceeding. They have support in the record and reflect a reasonable interpretation of the statute. *See NLRB v. Staiman Bros.*, 466 F.2d 564, 566 (3rd Cir. 1972); *NLRB v. Pacific Gamble Robinson Co.*, 438 F.2d 112, 113 (9th Cir. 1971); *Westchester Plastics of Ohio, Inc. v. NLRB*, 401 F.2d 903, 908 (6th Cir. 1968); *Trailmobile Division Pullman, Inc. v. NLRB*, 379 F.2d 419, 423 (5th Cir. 1967).

The Board's order will be enforced.

TRASK, Circuit Judge (dissenting).

I find myself in disagreement with the views of the majority of the panel. I would adopt the minority opinion of the Chairman of the Board who expressed himself in dissent with the two member majority of the panel in 210 NLRB 894 (1974).

The dispute began as a representation proceeding in which a consent election was held. The parties agreed that the eligible voters would include "employees who did not work during said payroll period because they were ill or on vacation or temporarily laid off." Four votes were cast for the Union and four against with one ballot, that of employee Childress, challenged by the Board agent because the voter's name was not on the eligibility list. Because this ballot was sufficient to affect the result, an ex parte investigation of the challenge was conducted by the Regional Director.[1]

The Company promptly sent a letter to the investigating agent setting forth its position and enclosing documentary evidence to support its position. The Company offered "any further information" if desired. Among the documents was a detailed report of a medical examination by a Dr. Baker, which concluded with this statement:

"As viewed at this time I do not anticipate this patient returning to his previous work in the maintenance department at the hospital in the foreseeable future."[2]

Shortly thereafter a report on the challenged ballot was issued, which stated that the ballot should be counted. It contained a statement that "[t]here is no evidence, nor does the Employer contend, that Childress has been terminated." The recommendation was that the challenge be denied and the vote counted. The Company promptly filed exceptions and pointed out the failure to hold a hearing. The Board, however, counted the ballot against the employer, approved the election, adopted in full the Regional Director's findings and certified the Union as the bargaining agent.

Thereafter, the Company declined to bargain in order to obtain judicial review. When unfair labor practice charges were filed, the Company admitted its refusal to bargain but denied the validity of the Board's certification and that it had committed any unfair labor practice. Within a month the General Counsel filed a motion for summary judgment. The Company filed an answer on April 2, 1974, in which it incorporated its previous answer to the complaint, reasserted its exceptions and de-

---

* Honorable William T. Sweigert, Senior United States District Judge for the Northern District of California, sitting by designation.

1. Pursuant to Board's Rules and Regulations Series 8 (29 C.F.R.), Section 102.69(c).

2. The Company later, but before any challenge report, sent to the agent a clarification letter explaining that what the doctor was saying was that he did not foresee the possibility that the employee would return to the maintenance department.

manded a hearing.[3] It also offered to prove, if a hearing were held, that:

"First, Childress suffered an injury on February 6, 1973, which resulted in a permanent disability and that these facts were known to the Employer prior to the election;

"Second, the Employer had decided prior to the election not to re-employ Childress in the maintenance department;

"Third, steps were taken to obtain a permanent replacement for Childress and a permanent replacement was, in fact, obtained prior to the election;

"Fourth, the Employer has no procedure for 'removing an employee from the payroll.'" C.T. at 37–38.

In support of its offer, the Company submitted letters and medical reports which had been previously submitted in support of its exceptions. The motion for summary judgment was granted and a decision and order of May 24, 1974, found the Company guilty of the unfair labor practice as charged.

The general rule of eligibility to vote in a representational election is that the employee must be employed and working on the date of the election. An exception has been created for absence because of illness. If the employee has a reasonable expectancy of returning to work in the unit within a reasonable time in the future, he is eligible. *Whiting Corp. v. NLRB*, 200 F.2d 43, 45 (7th Cir. 1952). The Board has applied the "reasonable expectancy" test to various kinds of absences:

1. An employee who has been "laid off" during the eligibility period may vote if he or she has a reasonable expectancy of being recalled to unit work. *Thomas Engine Corp.*, 196 NLRB 706 (1972); *Sierra Lingerie Co.*, 191 NLRB 844 (1971).

2. Summer employees if they have a reasonable expectation of becoming regular employees. *NLRB v. Joclin Manufacturing Co.*, 314 F.2d 627, 634 (2d Cir. 1963).

3. Seasonal employees if they have a reasonable expectancy of regular employment. *Sierra Pacific Power Co.*, 56 NLRB 458 (1944).

4. Employees on leave of absence if they have a reasonable expectancy of returning to regular employment on completion of their leave. *General American Transportation Corp.*, 187 NLRB 120 (1970).

The last day Childress worked was on February 6, 1973. The election was held June 8, 1973. During his four month absence he had been treated but had shown no improvement and his doctor did not anticipate his return to work "in the foreseeable future." The affidavits and evidentiary material in the answer to the motion for summary judgment supported these factual statements. The affidavit of the hospital administrator also stated that because of his medical history "under no circumstances" would he reemploy Childress in the maintenance department, which was the applicable work unit. C.T. at 39. The motion of General Counsel did not deny or put in issue these critical facts, nor did any of the appendices attached to it.

The Board's own Rules and Regulations require it to hold a hearing when there are substantial and material issues of fact. 29 C.F.R. Part 102. As Judge Friendly of the United States Court of Appeals for the Second Circuit succinctly stated:

"[A] court cannot properly enforce an order finding an employer guilty of an unwarranted refusal to bargain with a union certified in an election if it appears, with respect to challenges affecting the result, either that they were disposed of erroneously as a matter of law or that the employer raised 'substantial and material factual issues' under the Regulations and was

---

**3.** The response to the motion for summary judgment contained affidavits and documentary matter supporting the Company's position. There is no record of any oral argument on the motion.

denied a hearing that he seasonably requested." *NLRB v. Joclin Manufacturing Co.*, 314 F.2d 627, 631–32 (2d Cir. 1963).

Judge Ainsworth of the Fifth Circuit more recently addressed the problem when he said:

"As to the Company's second principal assertion of error, the three employees, Parrish, Norris and Smith, alleged to have voluntarily abandoned employment with the Company prior to the eligibility date, we are unable to tell from the record, the case having been decided on summary judgment, whether their employment ceased voluntarily or not. The issue of fact is sharply contradicted and seriously disputed. The Company, on the one hand, contends that the employees quit their employment without any expectancy of returning. The Board contends, to the contrary, that the facts developed by the Regional Director in his ex parte investigation show they were merely quitting for the time being, until the strike and confusion could subside, and that they had no intention of abandoning their jobs. The Company further asserts that the Regional Director's investigation could not effectively determine whether these employees intended to return to work after the strike and that only after a full hearing can this crucial issue of fact be resolved.

"The question does not properly lend itself to disposition by summary judgment and a hearing should have been held by the Board to settle the issue. *See N.L.R.B. v. Smith Industries, Inc.*, 5 Cir., 1968, 403 F.2d 889; *N.L.R.B. v. Ortronix, Inc.*, 5 Cir., 1967, 380 F.2d 737." *NLRB v. Dalton Sheet Metal Co., Inc.*, 472 F.2d 257, 260–61 (5th Cir. 1973).

*See also NLRB v. G. K. Turner Associates*, 457 F.2d 484, 489 (9th Cir. 1972); *NLRB v. Capital Bakers, Inc.*, 351 F.2d 45, 51 (7th Cir. 1965).

There can be no question that the issues raised by the employer here were both substantial and material. They deserve and are entitled to the process that is due under our constitutional standards and the rules of the Board itself.

I would enter a decree denying the Board's petition for enforcement, vacating its Decision and Order and remanding for further proceedings consistent with this opinion.