G. H. REED and G. A. Reed, d/b/a Wind River Logging Company, Petitioners,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 246–69.

United States Court of Appeals, Tenth Circuit.

Aug. 11, 1970.

**332**

Lawrence W. Treece, Denver, Colo. (Holland & Hart, Denver, Colo., of counsel, with him on the brief), for petitioners.

J. L. A. de Passalacqua, Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Abigail Cooley Baskir, Washington, D. C., with him on the brief), for respondent.

Before LEWIS, Chief Judge, and PICKETT and SETH, Circuit Judges.

LEWIS, Chief Judge.

Petitioners (Wind River) seek review of and relief from a decision and order of the National Labor Relations Board premised on a finding that Wind River has violated section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), by the discriminatory discharge of two employees, Zyscowski and Zacharias, and by the refusal to reemploy such employees because of their participation in activities protected under section 7 of the Act. The Board has cross-appealed for enforcement of its order. The Board decision is found at 175 N.L.R.B. No. 133.

The original complaint filed against Wind River charged section 8(a)(1) violations involving discriminatory treatment of six employees. The trial examiner found that none of the employees had been discharged or refused reemployment in violation of the Act and recommended that the complaint be dismissed. The Board adopted the findings of the examiner as to all employees other than

Zyscowski and Zacharias but disagreed with the examiner in regard to these employees both as to the motivation for their discharge and the determination that, in any event, the two had not been engaged in protected activity that was recognizable under the Act. We conclude from an examination of the record as a whole that the inferences drawn by the Board from the evidence and the result reached by its decision and order are neither reasonable nor fair and consequently lack substantial support in the record. We must, therefore, set aside the Board order and refuse enforcement. Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456; Pacific Intermountain Express Co. v. NLRB, 10 Cir., 412 F.2d 1.

The evidence of the chain of events that led to the discharge of the two subject employees is not in serious conflict and may be summarized by narration: Wind River is a logging contractor supplying United States Plywood on a production payment basis. The logging is done in the wilderness area of Wyoming and is completed in phases, two of which are pertinent to the subject case. The first phase is that of cutting the standing timber and this work is done by the falling crew. Zyscowski and Zacharias were employed as "fallers." The next operation is that of "skidding," the removal of cut logs from the woods by dragging the cut timber out with crawler-type tractors. The skidding operation is, of course, dependent on prior cutting and the two operations are hazardous to each other and must be separated by time but coordinated in any given area. One skidder can remove the timber cut by two fallers as a general rule.

Fallers are paid on a piece-work basis and the work is very lucrative during the summer months. During the winter, it is not. Cold weather, waist-deep snow, and the necessity of "pitting" around the trees so that only an eight- to twelve-inch stump is left not only decreases production but increases both the hazard and discomfort of the work. However, Wind River's operations were year round ex-

cept during the spring break up when melting snow makes the forest area so muddy as to be inaccessible.

During late November, 1967, the falling crew was working in an area known as Long Creek. By January 4, 1968, physical conditions had become miserable and the crew, knowing that another area, East Fork, was available for cutting under better snow conditions, "bunched"[1] it and requested a move to that area. Mr. Reed, the operating partner of Wind River, considered the request justified and desirable, for the move would both improve working conditions for the crew and increase production for Wind River. The move was made and the crew operated at East Fork until that area was substantially exhausted about February 10. The only remaining area available for cutting was at Camp Creek and work began there on February 19.

Conditions at Camp Creek were very bad. Deep snow and bitter weather made the work both arduous and hazardous. Work records showed great variance among the individual members of the crew. On February 19, the number of trees felled by individuals reached a high of 105 and a low of 10. Zyscowski felled 16 trees; Zacharias, 25. A storm prevented any work being done on February 20. On February 21 individual production varied between 105 and 11. On that day Zyscowski felled 28; Zacharias, 20. Only three men worked on February 22, the high production being 90. Five men worked on February 23. Zyscowski and Zacharias worked neither day. A storm prevented any work on February 24 and February 25.

The record undisputedly shows that after the move to Camp Creek each of the men, with one exception, "bunched it" to some degree resulting in erratic and undependable production. To meet this situation Reed instructed his foreman, according to his undisputed and corroborated testimony, fully credited by the trial examiner, "that we would take all the men who showed on [Monday] February 26 and balance the skidders according to the number of cutters—anybody not showing up on February 26, not to take them back at a later date."

Only four men reported for work on February 26 and these were the only fallers retained by Wind River. As a result of this small cutting crew, nine skidders were laid off in the follow-up phase. Zyscowski and Zacharias reported for work on February 28 but were refused employment.

From this evidentiary background as set out, and the record as a whole, the trial examiner concluded that the discharge of Zyscowski and Zacharias had not been in violation of the Act. In so doing he credits the testimony of Reed that had Zyscowski reported on February 26 he would have been "tickled" to keep Zyscowski on for he was a skilled faller and that he would have retained Zacharias but probably would not have hired him the next season because he was not a good woodsman. The decision of the Board necessarily rejects this finding of credibility.

The Board concedes the right of Wind River to discharge employees who failed or refused to work during the winter season. In contradiction to this premise the Board, citing NLRB v. Washington Aluminum Co., 370 U.S. 9, 82 S.Ct. 1099, 8 L.Ed.2d 298, holds that participation of Zyscowski and Zacharias in "the discussions and protests over adverse working conditions and the suggestions that the cutters quit [en masse] and seek unemployment compensation because of these working conditions also constituted protected concerted activities." The "working conditions" considered in the

---

1. This term appears repeatedly in the testimony. The trial examiner defined the term thus: "All concerned agree that 'bunching' means simply knocking off for the day, either by one person or more than one person for any number of conceivable reasons, such as saw trouble, storms, high winds, illness, etc."

Bunching is not a strike and even when done in concert or agreement is no more than a production slow down.

cited case were under the control of the employer and a concerted protest against such conditions was held to be a protected activity. But the conditions at Camp Creek were inherent natural conditions and a protest against these conditions was a protest against winter work. To urge employees to quit en masse for the purpose of obtaining unemployment insurance is not a protected activity under the Act. No further specific reason is given by the Board for the relief granted Zacharias as a participant in the protected activity.

 Zyscowski had, indeed acted as spokesman for the crew from time to time and in so doing was engaged in a protected activity under the Act. He had so acted in 1965, an occasion the trial examiner considered to be too remote to have triggered his 1968 discharge and we agree. In 1967, he was discharged for allegedly circulating a petition among the men but was rehired two days later when he denied the act. The nature of the petition is not revealed by the record and thus the incident cannot be considered to be of great significance and one necessarily involving a protected activity. But the Board places primary emphasis in support of its decision that Zyscowski was discharged under violative pretext because of a conclusion that Reed's testimony in the subject case was at odds with earlier testimony given before a Wyoming administrative commission. We do not agree. Reed consistently describes Zyscowski as a man who simply didn't like to work in the winter and who actively expressed to others such dislike, an action that contributed to the natural discontent of all others exposed to the hardship of winter work. And although Zyscowski was a leader within the crew he was not singled out for discharge but was subjected only to a pressing and justified managerial decision. The simple fact of leadership does not clothe an employee with a shield of protection against discharge.

Since we hold that neither Zyscowski nor Zacharias was discriminatorily discharged we need not consider the fact that neither was rehired in the spring although others also discharged were rehired. Neither Zyscowski nor Zacharias applied for reemployment and Wind River had no legal obligation to seek them out.

The petition for review is granted and the decision and order of the Board is set aside. The cross-petition for enforcement is denied.