EASTERN GREYHOUND LINES, (A Division of the Greyhound Corporation), Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 15477.

United States Court of Appeals
Sixth Circuit.

Oct. 13, 1964.

---

Theodore Voorhees, Philadelphia, Pa., for petitioner, Matthew J. Broderick, Philadelphia, Pa., Foster J. Fludine, Cleveland, Ohio, on the brief.

Robert G. Sewell, Atty., N.L.R.B., Washington, D. C., for respondent, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Warren M. Davison, Atty., N.L.R.B., Washington, D. C., on the brief.

Before O'SULLIVAN and PHILLIPS, Circuit Judges, and McALLISTER, Senior Circuit Judge.

O'SULLIVAN, Circuit Judge.

Petitioner, Eastern Greyhound Lines, requests us to review and set aside orders of the National Labor Relations Board determining that Eastern's "dispatchers" constitute an appropriate unit of employees for collective bargaining, and finding petitioner guilty of an unfair labor practice in refusing to bargain with the union certified following an election directed by the Board. Eastern Greyhound Lines, 138 NLRB 8 (1962); 143 NLRB No. 71 (1963). The single question involved is whether Eastern's dispatchers are "supervisors" within the meaning of Section 2(11) of the National Labor Relations Act, as amended, 29 U.S. C.A. § 152(11). If they are, Section 14 (a) of the Act, as amended, 29 U.S.C.A. § 164(a), relieves Eastern of the duty to bargain with a union as their representative. This Court has previously affirmed a District Court order dismissing Eastern's action brought to enjoin the election ordered by the Board. Eastern Greyhound Lines v. Fusco, 323 F.2d 477 (C.A. 6, 1963). We there held that Eastern could challenge the finding that its dispatchers were not supervisors only by refusing to bargain with the certified union, and obtaining here a review of an unfair labor practice order based on its refusal. Such review is provided by Sections 9(d) and 10(e) of the Act, 29 U.S.C.A. §§ 159(d), 160(e). Pursuant to such sections, the matter is now before us for decision on the merits. We conclude that Eastern's dispatchers are "supervisors" and the Board's contrary finding and order must be set aside and denied enforcement.

Eastern operates an interstate bus service in nineteen states and the District of Columbia, as well as in two Canadian Provinces (the dispatchers in Canada are not employed by Eastern, and are not here involved). Immediate direction of its daily bus operations and as many as 3,000 drivers is in the hands of its approximately 121 dispatchers and four assistant dispatchers, whose overall functions are best described by reproducing extensive portions of the Board's first opinion.

"The primary function of the dispatchers is to dispatch buses and drivers in accordance with company schedules and anticipated needs for extra service. They are also required to forecast needs, make sufficient use of equipment and manpower, sign drivers' pay slips, handle drivers' bids, report infractions of rules by drivers, prepare clerical reports relating to traffic and equipment, receive telephone reports of accidents, notify proper authorities thereof, and maintain liaison with and coordinate with other dispatch points regarding additional needs and the availability of men and equipment.

" * * * The evidence indicates that in cases of major violations the dispatcher tells the driver to see the superintendent, thus 'removing him from service' until a decision is made by the higher official.

" * * * Dispatchers assign equipment, call extra men to work when needed, and allocate available work to drivers. * * * The number of extra drivers called to work by the dispatcher is based on his determination of what is required to adequately maintain and protect service to passengers.

" * * * [Dispatchers'] duties include selection of proper equipment, obtaining and dispatching extra men and equipment to other locations as needed, supervising the bidding on runs, assigning equipment to men and giving them special operating in--

structions, determining that a driver is in a fit physical and mental condition to operate his run, overseeing the loading of buses, granting permission for days off, approving pay slips, determining what regular driver will be used if needed when a supply of extra drivers is exhausted, controlling work of extra drivers in determining whether to put them on extra sections, charters, or 'deadheading' [footnote 9] them, and in determining need for 'protection' [footnote 10] * * * they may cancel runs or delay departures, enforce safety rules and regulations, and 'take charge' when an accident occurs.

"9. 'Deadheading a man' is sending him to another location in an empty bus.

"10. Men on 'protection' are in a standby capacity in case they are needed to handle additional runs." 138 NLRB 10–12

From the foregoing, and without more, we indeed gain an immediate impression that Eastern's dispatchers are supervisors within the ordinary acceptation of that term. The evidence showed that in some places Eastern's terminals and its buses are in operation all day and all night. Dispatchers operate in three shifts so that one of them is in service at all hours. In the late night and the early morning hours there are generally no personnel with authority higher than that of a dispatcher on duty. If dispatchers are not supervisors, this multistate transportation system operates a substantial part of the time without supervision. We must decide, however, whether an Eastern dispatcher fits the statutory definition of a supervisor. In the categories relevant to the question here, the statute provides:

"The term 'supervisor' means any individual having authority, in the interest of the employer, to * * * *suspend* * * * *assign* * * * or *discipline* other employees, or responsibly to *direct them* * * * or *effectively to recommend such ac-*

*tion,* if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment." (Emphasis supplied.) 29 U.S.C.A. § 152(11).

Disagreement between Eastern and the Board centers primarily on the actual existence and exercise of supervisory powers theoretically accorded and delegated dispatchers in the relevant "job description" and on the question whether dispatchers are required to exercise "independent judgment" in discharging such otherwise supervisory functions as they actually perform. In arriving at its conclusion, the Board reviewed the various higher levels of supervisory authority in Eastern's table of organization and emphasized that dispatchers' authority flows from and is carried out in obedience to instructions given by such higher authority. In the beginning consideration of the issue involved, the Board's field examiner took occasion to say that "It was the union's position that any authority exercised by the dispatchers is *delegated.* * * * *" We are persuaded that giving importance to this observation led the Board into a continuing misapprehension of the question it was to decide. The effective exercise of authority is nonetheless supervisory because it is a delegated authority.

It is not necessary that we evaluate each function exercised or exercisable by the dispatchers which Eastern contends accords them supervisory status. If they possess any one of the criteria set out in the statute, they meet the test. Soon after the enactment of Section 2 (11), opinions of this Court established that an individual is a supervisor if he possesses any one of the powers there described to be exercised in his independent judgment. N. L. R. B. v. Edward G. Budd Mfg. Co., 169 F.2d 571 (CA 6, 1948), cert. denied sub nom. Foreman's Ass'n v. Edward G. Budd Mfg. Co., 335 U.S. 908, 69 S.Ct. 411, 93 L.Ed. 441 (1949); Ohio Power Co. v. N. L. R. B., 176 F.2d 385, 11 A.L.R.2d 243 (CA 6, 1949), cert. denied, 338 U.S. 899, 70 S.Ct.

88

249, 94 L.Ed. 553 (1949). We are compelled to conclude that Eastern's dispatchers are made supervisors by at least two of their functions, the power to "suspend" and the power "effectively to recommend" discipline of an employee. The Board's contrary finding is, on our view of the record as a whole, without support by substantial evidence. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

### (1) *Power to Suspend.*

◼ Notwithstanding some attempt at qualification, the Board found as a fact that it is part of a dispatcher's authority and duties to order a driver off a bus for misconduct. Such misconduct included insubordination. The Board's brief to this Court avers, "For major infractions, such as intoxication or insubordination, the dispatcher tells the driver to see the transportation superintendent or some other management official for a determination of the action to be taken." This instruction operates to "remove the driver from service"—he is suspended pending final determination of appropriate discipline. It is true that the dispatcher's removal of a driver for an infraction is not the final action, as the dispatcher's removal of a driver from service is controlling only "until a decision is made by the higher official." But it is the dispatcher who must, in his independent judgment, make the initial on-the-spot decision that the circumstances require taking a driver off a bus. It is not claimed that such commands by a dispatcher are not obeyed. While the dispatcher's action is responsible for suspending the driver only until higher authority reviews its propriety, this does not make the driver any the less suspended by the dispatcher's action. In its address to us, the Board characterizes such action as a "simple ministerial act, capable of performance by any rank and file employee." We are unable to accept this ipse dixit as a substitute for substantial evidence. Neither can we accept the easy assertion that "It lacks any element of responsible direction of employees, and is in no way indicative of supervisory status."

### 2) *Recommendation of Discipline.*

◼ Eastern has promulgated a job description applicable to its dispatchers. It provides that the dispatcher "Maintains discipline and order among drivers; removes drivers from service for infraction of company policies rules and regulations; recommends disciplinary action to be taken for such infractions." The Board recognized that "the actual existence of supervisory authority rather than its exercise is controlling." Such recognition accords with this Court's decisions in Ohio Power Co. v. N. L. R. B., and N. L. R. B. v. Edward G. Budd Mfg. Co., supra. It is clear that the quoted job description clearly authorizes and requires the dispatchers to recommend discipline, but the Board expresses a view that "the absence of exercise of authority may negative its existence." We are not sure what is meant by this observation because there really is no dispute concerning both the power and the duty of the dispatcher to recommend discipline. None of the dispatchers called as witnesses for the union or Eastern denied that it was his duty to make recommendations of discipline. The Board, however, denies the dispatchers' authority to effectively recommend discipline. For this position, it relies upon the fact that some dispatchers said they did not make such recommendations, that some recommendations were not followed, and that some dispatchers felt that without access to the personnel files of the drivers involved they could not make appropriate recommendations.

Dispatchers are provided with forms for reporting infractions of driver rules with a space for recommending discipline. Eastern introduced a quite substantial number of completed forms bearing such recommendations.[1] The dis-

---

1. A company representative produced a representative group of 19 discipline reports which he had selected from approximately 100 similar reports that he

cipline finally meted out in most of these cases corresponded closely with the dispatchers' recommendations. Eastern's President, its Director of Industrial Relations and two dispatchers expressly testified that dispatchers' recommendations were effective.[2]

The Board rejected the evidence relating to the effective power to recommend discipline on several grounds. It noted that dispatchers do not ordinarily have access to drivers' personnel files, that an independent investigation is made by higher supervisory officials before finally determining what discipline to impose, and stated that "there is no probative evidence that any weight is given to a dispatcher's recommendations." It concluded that "under all the circumstances * * * such recommendations are not 'effective' within the meaning of the Act," citing two of its own cases where employee recommendations were subject to independent investigation.

It is true that dispatchers do not ordinarily have access to drivers' personnel files, and two dispatchers testified that they refused to make disciplinary recommendations because they felt unable to do so without such information. Similarly, it is a fact that an independent investigation is made by higher supervisory employees before dispatcher recommendations are finally accepted. In its brief to this Court, the Board argues from these facts to the conclusion that

"it is inconceivable that the Company would give any meaningful weight to the dispatcher's recommendation. * * *" We are unable to attach such effect to these facts. That some dispatchers shirked their acknowledged duty to recommend discipline is not substantial evidence that such power did not exist or was never exercised in face of the clear evidence that many other dispatchers did exercise their power. That dispatchers have no access to personnel files does have some bearing on the degree of effectiveness of their recommendations, but this fact is at least offset by testimony that dispatcher recommendations are given great weight because they are the only persons in daily contact with the drivers.

Even the occasions when the particular style and extent of the discipline recommended were not carried out do not support a conclusion that the recommendation was not effective. If *some* discipline was meted out, the recommendation that *discipline* be imposed was effective. We do not believe that the circumstance that dispatcher recommendations are subject to independent investigation before final action detracts from this fact. Indeed the Fifth Circuit has suggested that "[t]he very fact that the Employer considered that these recommendations justified the time and expense of an investigation reflects the substantial significance attached to them." N. L. R. B. v. Southern Airways Co., 290 F.

---

brought to the hearing with him. He testified that he had boxes full of similar reports at his office. This testimony was neither challenged nor claimed to be incredible.

2. President Shaffer testified as follows:
   "Q. And does the superintendent or the regional manager or whoever the person may be to whom this recommendation is brought, does he act on that recommendation?
   "A. Yes.
   "Q. So that it's an effective recommendation, is it?
   "A. That's right. * * *"
   E. C. Nichols, Director of Industrial Relations, was asked:
   "Q. And then the Company officials at a higher level have administered disci-

pline on the basis of that [dispatcher's] recommendation?
   "A. Of the dispatcher's recommendation, yes, sir."
   After dispatcher Carson testified he had recommended that certain drivers should be disciplined and that others should be discharged, the following ensued:
   "Q. Have those drivers been subjected to discipline as a result of the recommendation that you have made?
   "A. Yes."
   And dispatcher Meyers testified: "We have been told we will be notified in cases that we have recommended discipline what the outcome of the discipline has been. * * * I have been advised verbally that our recommendations have been followed."

2d 519, 524 (CA 5, 1961). We cannot accept the ambiguous implications possibly raised by such investigation and the circumstances already noted as substantial evidence sufficient to support rejection of the strong evidence that dispatchers' recommendations are effective.

■■ As already noted, the Board accompanied its findings with the statement that "there is no probative evidence that any weight is given to a dispatcher's recommendations." While this statement hardly reflects the "clarity" by which the exercise of administrative power is "best vindicated," Phelps Dodge Corp. v. N. L. R. B., 313 U.S. 177, 197, 61 S.Ct. 845, 85 L.Ed. 1271, 1284 (1941), it might be taken as expressive of a refusal to credit the positive testimony already noted. In its brief to this Court, however, the Board as asserted that the coincidence between actual and recommended discipline is not controlling, since:

"* * * it is a time-honored rule of logic that correlation does not prove causation; and causation is the crucial element here. The focus is on what weight the dispatcher's recommendation carries with management in determining discipline. *And on this point the Company failed to produce any evidence.*" (Emphasis supplied.)

From this we can only conclude that the Board simply ignored the testimony contrary to its conclusion. But even if we assume the Board considered and intentionally discredited such testimony, we are unable to accept its determination. We recognize that ordinarily the credibility of witnesses is a matter to be determined by the Board and its hearing officers rather than a reviewing court. Compare N. L. R. B. v. Walton Mfg. Co., 369 U.S. 404, 82 S.Ct. 853, 7 L.Ed.2d 829 (1962) (per curiam). This legal generality, however, does not relieve us from exercising the powers or performing the duties that are ours under the substantial evidence rule as declared by the Supreme Court in Universal Camera. We have recently reviewed the relevant cases

and announced that "[i]n a proper case this Court may decline to follow the action of an examiner in crediting and discrediting testimony, even though the Board has adopted the Examiner's findings." N. L. R. B. v. Elias Bros. Big Boy, Inc., 327 F.2d 421, 426 (CA 6, 1964). For emphasis, we repeat the Board's statement that "there is no probative evidence that any weight is given to a dispatcher's recommendations," and the assertion in its brief in this Court that "on this point [the weight accorded dispatchers' recommendations] the company failed to produce *any evidence.*" In view of the clear fact that there is substantial oral and documentary evidence supporting the company's position in this regard, we can only guess that the quoted statements are the Board's way of saying that the company's testimony was completely incredible. If so, neither the Board nor the Examiner who received the evidence has given expression to any reason for finding cogent evidence incredible. Assuming the Board meant to do so, we cannot conscientiously follow its lead.

■ To recapitulate, our starting point for this determination is the clear fact that the testimony sought to be discredited is uncontradicted by any direct showing, testimonial or otherwise. This fact is not sufficient to conclude our inquiry, however, since we would not presume to bind the Board to accept interested testimony simply because it remains formally uncontradicted, see N. L. R. B. v. Radcliffe, 211 F.2d 309, 315 (CA 9, 1954), cert. denied sub nom. Homedale Tractor & Equipment Co. v. N. L. R. B., 348 U.S. 833, 75 S.Ct. 56, 99 L.Ed. 657 (1954). But see N. L. R. B. v. Ray Smith Transp. Co., 193 F.2d 142, 146 (CA 5, 1951); cf. N. L. R. B. v. Cleveland Trust Co., 214 F.2d 95, 98 (CA 6, 1954). Tenuous support for the Board's assumed rejection of this testimony, moreover, may be claimed in the circumstance that an independent investigation is made following dispatcher recommendations, and possibly also in the circumstance that a few dispatchers do not discharge their duty

to make recommendations. But against these circumstances and the interest of the witnesses must be set not only the fact that Eastern's President, Director of Industrial Relations and dispatchers are the persons most likely to know what effect the recommendations have, but also the important fact that Eastern adduced a very substantial number of completed forms of unquestioned authenticity, showing a very high correlation between recommendation and actual discipline. Together with the uncontradicted duties of the dispatchers which make it highly plausible, this showing is strong enough that we cannot allow it to be dismissed with an unexplained statement that no probative evidence has been introduced. Some cogent reason would have to be advanced to offset the showing thus made, and no such reason has been advanced by the Board, either in its opinion or in its addresses to this Court.

The order of the Board is set aside and denied enforcement.