**PACIFIC INTERMOUNTAIN EXPRESS COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 174–68.**

United States Court of Appeals
Tenth Circuit.

June 13, 1969.

Nathan J. Fullmer, Salt Lake City, Utah, for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Herman M. Levy and Jonathan M. Marks, Attys., N. L. R. B., Washington, D. C., on the brief), for respondent.

Before MURRAH, Chief Judge, and PHILLIPS and HILL, United States Circuit Judges.

HILL, Circuit Judge.

This is a petition for review and cross-petition for enforcement of an order of the National Labor Relations Board which determined that Pacific Intermountain Express Company (P.I.E.) was guilty of violating § 8(a) (5) of the

1

National Labor Relations Act, as amended, 29 U.S.C. § 151 et seq. The company maintains that the refusal to bargain was justified because the employees in the bargaining unit, three line dispatchers at the company's Denver terminal, are all "supervisors" within the meaning of § 2(11) of the Act. The Board concedes that if the dispatchers are supervisors then § 14(a) relieves the company of any duty to bargain and constitutes a complete defense to the present unfair labor practice charge.

On April 22, 1968, following a petition for an election filed by the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 961, a representation hearing was held to determine the status of the dispatchers under the Act. The Regional Director concluded that the three dispatchers were not supervisors and that they comprised an appropriate bargaining unit. An election was held, the union was certified, and the company denied the union's request to bargain. The union then filed an unfair labor practice charge; the Board granted its General Counsel's motion for summary judgment, basing its decision on the record in the representation hearing. The sole issue is thus whether there was substantial evidence adduced at the representation hearing to support the Board's finding that the dispatchers are employees rather than supervisors.

The company, headquartered in Oakland, California, is a nationwide trucking concern engaged in the interstate transportation of freight. Of the many stations and terminals maintained by the company, the Denver terminal is a major point of departure, employing 38 drivers, various other employees, and three line dispatchers. The dispatchers are under the direct control of dispatcher supervisor Foster who, in addition to hiring and discharging dispatchers, performs the same functions as the other dispatchers.[1] The dispatchers, including Foster, operate in three successive 8-hour shifts so that one of them is in service at all times. Dispatchers are paid a monthly salary, do not punch a time clock, do not receive overtime, are not penalized for occasional absences, receive health and welfare benefits provided for supervisory employees, enjoy the same vacation benefits as supervisory personnel, and participate in managerial supervisory meetings. It is their responsibility to coordinate the operations of drivers, trucks and trailers to ensure the smooth flow of freight through the terminal. To this end the dispatchers call the drivers to work, assign them to equipment, and schedule their departures. Upon the arrival of foreign teams, driver teams permanently located in other terminals, the dispatchers either relieve them of duty or redirect them, depending upon the prevailing freight schedule and in accordance with the terms of the collective bargaining contract governing the conditions of the drivers' employment.

In assigning drivers and scheduling departures, the dispatchers consult projection sheets and lists prepared by others. To determine which drivers to assign, a "board" is prepared by line driver supervisor Travis who prepares the board in accordance with the labor agreement with the drivers. Drivers are listed on the board in order of seniority with the dispatchers consulting the board and assigning drivers on a first-in, first-out basis. If one of the regular drivers is unable to respond to a call, the dispatchers examine the "extra board" and call the driver at the top of the list. Similarly in scheduling departures, the dispatchers follow a projection sheet ordinarily prepared by Foster. This sheet is compiled in conjunction with a daily conference call to Oakland which supplies information as to the units expected to arrive, their anticipated arrival time, and the like. From this information, Foster determines when a freight load must arrive at its destination and indicates the time the load is to be dispatched from

---

1. The company and the Board have stipulated that Foster is a supervisor under the Act and his status is not in issue.

Denver. In addition to the aforementioned primary functions, the dispatchers are also called upon to approve drivers' pay claims, grant drivers time off, and suspend drivers appearing for work in an intoxicated or other unfit condition.

Based upon the foregoing facts and in reliance upon Eastern Greyhound Lines, 138 N.L.R.B. 8 (1962), the Board determined that the assigning of drivers and scheduling of departures is routine; that the granting of emergency leave time, approval of pay claims, and suspension of unfit drivers is infrequent; and that, in general, the dispatchers are not called upon to exercise independent judgment. We cannot agree.

Supervisory personnel, as distinguished from general employees, are defined by § 2(11) of the Act to include "any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment." 29 U.S.C. § 152(11). It is not necessary to evaluate each function performed by the dispatchers since § 2(11) is to be read in the disjunctive, with the existence of any one of the statutory powers regardless of the frequency of its exercise, being sufficient to confer supervisory status upon the employee.[2] While the exercise of independent judgment is a question of fact, it is often a difficult one to assess, and "the gradations of authority * * * are so infinite and subtle that of necessity a large measure of informed discretion is involved in the exercise by the Board of its primary function to determine those who as a practical matter fall within the statutory definition * * *." N.L.R.B. v. Swift & Co., 292 F.2d 561, 563 (1st Cir. 1961). However, on appeal we must examine the record and set aside the Board's decision when we "cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view." [3] When viewed in that context, the record clearly indicates that the dispatchers are not mere clerks, but instead exercise independent judgment in a supervisory capacity.

The Board has cited only one instance in which the dispatchers of an interstate carrier have been denied supervisory status. In that case, Eastern Greyhound Lines, 138 N.L.R.B. 8 (1962), the dispatchers were considered by the Board to perform simple routine assignments in a clerical fashion. The petition for enforcement was denied because the court determined that the power to suspend drivers for intoxication and other major infractions of the rules, and the authority to recommend further disciplinary action for such infractions, was sufficient to meet the statutory criteria. Eastern Greyhound Lines v. N.L.R.B., 337 F.2d 84 (6th Cir. 1964). Moreover, in a recent case involving the line dispatchers at P.I.E.'s Oakland Terminal, it was recognized that such dispatchers have historically been classified as supervisors. In that case, directly contrary to the position taken here, the Regional Director determined that the dispatchers responsibly direct drivers "in a manner which clearly requires the exercise of independent judgment." Pacific Intermountain Express Co. N.L.R.B. Case No. 20–RC–8556 (March 6, 1969).

The Board, however, asserts that the state of the record is different here.

2. E. g., N.L.R.B. v. Corral Sportswear Co., 383 F.2d 961, 963 (10th Cir. 1967); Furr's, Inc. v. N.L.R.B., 381 F.2d 562, 565 (10th Cir. 1967); N.L.R.B. v. City Yellow Cab Co., 344 F.2d 575, 580 (6th Cir. 1965).

3. Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951); Warner Company v. N.L.R.B., 365 F.2d 435, 437 (3d Cir. 1966); cf. Cain's Coffee Co. v. N.ᵀ ᴿ.ᵀ ᵎ04 F.2d 1172, 1175 (10th Cir. 1 ᐟ ᐧ

Looking solely to the testimony of its lone witness, one of the company dispatchers, and completely ignoring the other testimony, including the testimony of dispatcher supervisor Foster, the Board proceeds to examine each separate function performed by the dispatchers, concluding in turn that each function is so completely circumscribed that independent judgment is lacking.

Although the Board contends that the approximately 75 daily arrivals and departures at the Denver terminal are all governed by a projection sheet, the record indicates that break downs, inclement weather, and other circumstances constantly operate to delay arrivals in Denver and necessitate revision of the projection sheet. During the hours when the dispatcher is alone at the terminal he must exercise his judgment in solving the various unanticipated problems. In doing so he is necessarily responsibly directing the drivers. Admittedly, the Board's witness indicated that in such situations he often telephoned someone for instructions. Nonetheless, he did indicate that he did not always rely on guidance from others. Foster, on the other hand, testified that it was the dispatchers' duty to make the required adjustment themselves and that they regularly did so.

Furthermore, the record is clear that dispatchers exercise supervisory authority over foreign teams arriving in Denver. When foreign teams arrive, the dispatcher must decide whether to relieve the teams from duty thereby removing them from pay status, or to redirect the teams to their home terminals or points en route. The provisions of the drivers' labor agreement are such that the correctness of the dispatcher's decision is of monetary importance to the company. The Board's witness admitted that this task becomes complicated when teams from several different terminals are awaiting the dispatcher's decision.

Additional examples of dispatchers responsibly directing drivers occur when drivers report for work intoxicated or otherwise unfit to assume their duties. The dispatchers have the unqualified responsibility to suspend the drivers and prohibit their departure. Although it does not appear that the dispatchers play any part in determining the ultimate discipline to be assessed against the drivers, "it can scarcely be denied that sending a man home is discipline or that it does require the use of independent judgment." Warner Company v. N.L.R.B., 365 F.2d 435, 439 (3d Cir. 1966). "[I]t is the dispatcher who must, in his independent judgment, make the initial on-the-spot decision that the circumstances require taking a driver off * * * While the dispatcher's action is responsible for suspending the driver only until higher authority reviews its propriety, this does not make the driver any the less suspended by the dispatcher's action." Eastern Greyhound Lines v. N.L.R.B., 337 F.2d 84, 88 (6th Cir. 1964).

Other indications that the dispatchers exercise judgment can be found in their approval of pay claims and the granting of emergency leave. It is not necessary to belabor the points since the exercise of any one of the statutory prerogatives of § 2(11) will suffice to render the employee a supervisor. We note in conclusion that if the dispatchers are not supervisors, the terminal is operated many hours each day without the benefit of direct supervision. This seems highly unlikely. Furr's Inc. v. N.L.R.B., 381 F.2d 562, 566 n. 7 (10th Cir. 1967).

The petition of the Board for enforcement of its order is denied.