**ARIZONA PUBLIC SERVICE COM-PANY, Petitioner-Appellant,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent-Appellee.**

No. 71–1183.

United States Court of Appeals, Ninth Circuit.

Dec. 15, 1971.

William M. Byrne, Sr., District Judge, dissented and filed opinion.

Frederick K. Steiner, Jr. (argued) of Snell & Wilmer, Phoenix, Ariz., for petitioner-appellant.

Howard C. Hay, N. L. R. B., Washington, D. C. (argued), Anderson D. Ward, Phoenix, Ariz. (argued) (for IBEW Local 387), Eugene G. Goslee, Acting Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Allison W. Brown, Jr., N. L. R. B., Washington, D. C., for respondent.

Jennings, Strouss & Salmon, Phoenix, Ariz., amicus curiae for Salt River Project Agricultural Improvement & Power District.

Before WRIGHT and CHOY, Circuit Judges, and BYRNE, Sr., District Judge.*

CHOY, Circuit Judge:

I

Arizona Public Service Company (the Company) is a natural gas and electricity utility serving customers throughout Arizona. The Company's electrical system generates power at several plants, and it buys and sells electrical power pursuant to contracts with other southwestern utilities. The Company headquarters are in Phoenix, and a smaller office is maintained in Flagstaff. Since 1945, the Company has recognized the International Brotherhood of Electrical Workers, Local Union No. 387 (the Union) as the exclusive bargaining representative of its production and maintenance employees.

In 1969, the Union sought an NLRB order directing an election among the Company's nine System Load Supervisors (Supervisors) and ten assistant System Load Supervisors (Assistants or Assistant Supervisors). The Company resisted arguing that these employees were all "supervisors" within the meaning of § 2(11) of the National Labor Relations Act, 29 U.S.C. § 152(11), (the Act), and not entitled to the Act's protection. Relying on The Connecticut Light & Power Co., 121 N.L.R.B. 768 (1958), the Board unanimously held that neither the Supervisors nor the Assistant Supervisors responsibly directed other employees and that, therefore, they were not § 2(11) "supervisors." 182 N.L.R.B. #72 (1970). The Board then directed an election, which the Union won. The Supervisors and Assistants were then included, in compliance with the Board's order, within the production and maintenance bargaining unit, and the Union was certified as their exclusive bargaining representative.

The Company, however, refused to bargain with the Union as the representatives of these employees. The Union petitioned for a Board order directing the Company to bargain. Although the Company contended that since the representation proceedings, it had altered and clarified the status and duties of the Supervisors and Assistant Supervisors to make them more clearly statutory "supervisors," the Board entered summary judgment for the Union, finding that the Company had engaged in unfair labor practices [1] and ordered the

---

* The Honorable William M. Byrne, Sr., United States District Judge, Central District of California, sitting by designation.

[1]. The Company was held to have violated §§ 8(a) (1) and (5) 29 U.S.C. §§ 158 (a) (1) and (5).

§§ 8(a) It shall be an unfair labor practice for an employer—"(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7;

"(5) to refuse to bargain collectively with the representatives of his employees . . ."

Company to bargain with the Union.[2] 188 N.L.R.B. #1 (1970). The Company again refused, and petitioned under § 10(f), 29 U.S.C. § 160(f), for review of the Board's order. The Board cross-petitioned for enforcement of its order under § 10(e), 29 U.S.C. § 160(e).[3] We deny enforcement because the employees in question are supervisors within the meaning of § 2(11).

## II

The National Labor Relations Act protects the self-organization and collective bargaining of "employees," which term excludes ". . . any individual employed as a supervisor." § 2(3), 29 U.S.C. § 152(3). "Supervisor" is in turn defined in § 2(11).

> "(11) The term 'supervisor' means any individual having authority, in the interest of the employer, (1) to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or (2) responsibility to direct them, or (3) to adjust their grievances, or (4) effectively to recommend such action, (5) if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment." (italicized numbers added)

Section 2(11) is to be read in the disjunctive, and the presence of any one of the enumerated powers is sufficient to render an employee a "supervisor." N. L. R. B. v. Fullerton Publishing Co., 283 F.2d 545, 548 (9th Cir. 1960). The statute turns upon the existence of a power and not the frequency of its utilization. For example, an employee who has the power to fire and hire other employees is nonetheless a supervisor though he has never exercised that power. *See* Ohio Power Co. v. N. L. R. B., 176 F.2d 385 (6th Cir. 1949). While the statutory tests are clear, the ultimate determination of supervisory status depends upon a close scrutiny of the job actually performed by the employees in question.[4] The Board is accorded a large measure of discretion in weighing the subtle differences between jobs, and its determination is accorded considerable judicial deference. N. L. R. B. v. Swift and Co., 292 F.2d 561 (1st Cir. 1961). However, the Board's finding of fact that the employees are not supervisors is subject to the scrutiny of judicial review. Universal Camera Corp. v. N. L. R. B., 340 U. S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Only if we can conscientiously say that the record considered as a whole supports the Board's finding must we affirm. Universal Camera, *supra*, at 488, 71 S.Ct. 456, 95 L.Ed. 456.

## III

The Company does not contend that the Supervisors and Assistant Supervisors have the authority to "hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees," or the power effectively to recommend such action.[5] It

2. The Company has appealed the Board's summary judgment as erroneously entered because there exist disputed issues of fact. Since we find that the Board was wrong in its initial determination that the employees in question are not supervisors, we need not decide this question.

3. The Union has been granted leave to intervene in this action. International Union United Auto etc. Workers, Local 283 v. Scofield, 382 U.S. 205, 86 S.Ct. 373, 15 L.Ed.2d 272 (1965). Thus, all the parties are now before this court.

4. Neither party has cited to us a case which is exactly like this one, and our research has revealed none. Many cases are similar and are of some guidance in determining what factors other courts have felt important in deciding the question of supervisory status. We find these cases and similar Board decisions helpful but not authoritative. See generally Daykin, "Legal Meaning of 'Supervisory' under Taft-Hartley," 13 Labor L.J. 561 (1961).

5. The Company does contend that the Supervisors report operational errors to their immediate superiors, that these reports may result in discipline, and that these employees have the real authority to issue written warnings. However, from our view of the case, we need not

does say, however, that these employees have the authority responsibly to direct other employees and such direction is not routine. We agree.

The Company's Supervisors and Assistant Supervisors have very few of the outward indicia of supervisory status.[6] A license is not required for their position and the sole scholastic proficiency desired is a knowledge of mathematics. They receive on-the-job training. Although regular meetings are held to discuss the problems and procedures of the system, these are not training meetings, and neither the Supervisors nor the Assistant Supervisors attend meetings of the Company's managerial staff. They have no hand in determining Company policy.

In the abstract, it may seem that these employees perform routine functions requiring skill and ability, but do little more than supervise the use of sophisticated machines. However, the record as a whole, extending beyond static job descriptions, demonstrates that these employees have supervisory authority.

First, the Company considers these men supervisors. Thomas G. Woods, Jr., vice-president of management services, testified that the Supervisors had a "clear delegated authority over virtually everybody in the company." And W. P. Reilly, the Company's president, stated that the Company delegated authority to the Supervisors in System Load Dispatch ". . . to operate the system, operate it efficiently, to operate it in the best economic manner and in a safe manner . . ." Reilly said that the Supervisors exercised this pow-

er on a day-to-day basis, and other employees were instructed to comply promptly with SLD directives.

Second, the Company's other employees consider these men supervisors. Lawrence Eaglin, an area manager who is in constant contact with SLD, instructs his men to obey SLD orders and testified that they never were, in fact, disobeyed. Priority is given all SLD calls, and there is frequent direct contact between SLD and field employees. The linemen ". . . may have disagreed [with an order] but I don't know of anyone that ever disobeyed an order from SLD . . . [b]ecause they have the final say—they have the control over everything so they are the final word." One of the Supervisors testified that in his experience no one had ever failed to carry out any of his instructions or requests.

Third, and most important, the Supervisors and Assistant Supervisors responsibly direct employees in the field after business hours and during emergencies. We defined "responsibly" in N. L. R. B. v. Fullerton Publishing Co., 283 F.2d 545, 549 (9th Cir. 1960), quoting with approval Ohio Power Co. v. N. L. R. B., 176 F.2d 385, 387 (6th Cir. 1949).

"To be responsible is to be answerable for the discharge of a duty or obligation. Responsibility includes judgment, skill, ability, capacity, and integrity, and is implied by power."

The jobs in question require judgment, skill, ability, capacity, and integrity. The Company's electrical system is often under the sole and complete control of these employees.[7] They decide when

decide whether these employees have the power effectively to recommend discipline.

6. The title "Supervisor" is, of course, irrelevant to determination of the statutory status. Both Supervisors and Assistant Supervisors are subject to the same pension, hospitalization, medical, and vacation plans as other employees. They are paid twice monthly, like other employees, and receive time and a half overtime, computed on an hourly basis. None of the Company's employees punch a time-

clock. Vacant Assistant Supervisor positions are filled by accepting bids from any employee within the system, but Supervisors are chosen solely from among experienced Assistant Supervisors. There is one payroll for officers and managers and another for the rest of the Company, including Supervisors and Assistants.

7. Practically speaking, there is no superior officer present after five in the evening, so that during the night, if these employees are not supervisors, the Com-

and how much electricity to buy or sell. They decide what priority is to be given to repair requests. They choose which linemen are to work, when and where. Field employees obey their directives. When there is no immediate threat to life or property and a superior is available, these employees will discuss a course of action with their superior. However, after hours or in emergencies, the Supervisor is authorized to and does bypass the normal chain of command.

The Board argues that while these jobs may require skill and judgment, their operation is routine, requiring only that the employees supervise machines and relay orders to field supervisors, who then supervise the actual execution of the directive. This was the case in The Connecticut Light & Power Co., 121 N.L.R.B. 768 (1958), upon which the Board relies. In general outline, the Connecticut Light load dispatchers are not unlike the Company's Load Supervisors. However, operations in the Connecticut Light utility were governed by a detailed set of rules and procedures, including state public utilities commission regulations. The Board held Connecticut Light's employees were not supervisors, a position it has generally maintained in the cases cited in the margin.[8]

On the other hand, the Company's Supervisors and Assistants are more than simple supervisors of machines. They effectively direct field operations during emergencies and after hours. The most revealing portion of the record before us is a condensed tape and transcript of approximately three hours of Supervisor operations on a Friday evening. The tape clearly documents a Supervisor exercising supervisory functions and responsibly directing linemen and servicemen. It reveals that the Supervisor's authority responsibly to direct other employees is "not weak or jejune but import[s] active vigor and potential vitality." N.L.R.B. v. Security Guard Service, Inc., 384 F.2d 143, 147 (5th Cir. 1967). While directing the ordinary repair operations and giving clearances for de-energized lines, testing faulty lines, and locating defects, the Supervisor, ignoring the chain of command, himself directed the vast operations necessary to return service to customers during a summer electrical storm.

The tape indicates that in an emergency—and such summer storms are frequent in Arizona—the Supervisor has the power to requisition any man on the spot and to direct his movement. He can direct substantially every man employed by the Company. See Ohio Power Co., supra. He has the authority to decide without consulting anyone whether or not a line can be de-energized, the final authority to determine the feasibility of repairs, and the ability to call linemen out for overtime. Cf., West Penn Power Co. v. N. L. R. B., 337 F.2d 993 (3rd Cir. 1964) (managerial personnel). They do far more than assign jobs according to a list before them or relay orders from their superiors. See N. L. R. B. v. Whitin Machine Works, 204 F.2d 883 (1st Cir. 1953); Precision Fabricators, Inc. v. N. L. R. B., 204 F.2d 567

---

pany's system operates without supervision. See Pacific Intermountain Express Co. v. N.L.R.B., 412 F.2d 1, 4 (10th Cir. 1969); Eastern Greyhound Lines v. N.L.R.B., 337 F.2d 84, 87 (6th Cir. 1964).

8. In the field of public utilities, the Board found load supervisors or dispatchers not to be supervisors in: Baltimore Gas and Electric Co., 138 N.L.R.B. 270 (1962); The Connecticut Light & Power Co., 121 N.L.R.B. 768 (1958); Puget Sound Power & Light Co., 117 N.L.R.B. 1825 (1957); Carbide & Carbon Chemical Co.,

92 N.L.R.B. 1555 (1951); Texas Electric Service Co., 77 N.L.R.B. 1258 (1948); Carolina Power & Light Co., 80 N.L.R.B. 1321 (1948); Rockland Light & Power Co., 72 N.L.R.B. 1117 (1947); Illinois Power Co., 70 N.L.R.B. 1043 (1946); Pacific Gas & Electric Co., 69 N.L.R.B. 258 (1946); Virginia Electric & Power Co., 66 N.L.R.B. 271 (1946); Toledo Edison Co., 63 N.L.R.B. 217 (1945); and Cincinnati Gas & Electric Co., 57 N.L.R.B. 1298 (1944). Dispatchers were found to be managerial personnel in Central Maine Power Co., 151 N.L.R.B. 42 (1965).

(2d Cir. 1953) ; and cases collected in note 8 *supra.* The Company's Supervisors handle most emergencies on their own; they do not implement instructions from others. *Compare* Texas Electrical Service Co., 77 N.L.R.B. 1258 (1948). Nor are there comprehensive regulations and guidelines which limit the area of individual judgment. *Compare Connecticut Light, supra.* Finally, the Supervisor's directions to subordinates are far more than the "necessary incidents of the application of their technical know-how." Westinghouse Electric Corp. v. N. L. R. B., 424 F.2d 1151, 1156 (7th Cir. 1970).

More helpful than the utility cases on which the Board relies are cases involving bus and transportation dispatchers.[9] In these cases emphasis is placed on the supervisors' role during emergencies caused by weather, mechanical failure, and personnel problems. When he is alone in the terminal, the bus dispatcher, like the Supervisor after hours, must juggle routes, maneuver men, depart from routine operators whenever he feels it is warranted. Of necessity, the Supervisors here responsibly direct the men in the field, sometimes routing directives through nominal superiors. The effective exercise of authority is nonetheless supervisory though it is passed on through another supervisory employee. Eastern Greyhound Lines v. N. L. R. B., 337 F.2d 84, 87 (6th Cir. 1964). Nor is it less supervisory power because it is couched in non-demanding terms.[10]

Accordingly, the Board's Decision and Order as supplemented is reversed.

WILLIAM M. BYRNE, Sr., District Judge (dissenting):

I respectfully dissent.

The unfair labor practice is practically conceded. The Company admits it

refused to bargain with the Union solely on the ground that it disagreed with the Board's conclusion that the System Load Supervisors and Assistant System Load Supervisors are not supervisors within the meaning of Section 2(11).

The Supreme Court has cautioned us that in construing the meaning of Section 2(11), we should look to the Board's "special function of applying the general provisions of the Act to the complexities of industrial life." (N. L. R. B. v. Erie Resistor Corp., 373 U.S. 221, 83 S.Ct. 1139, 10 L.Ed.2d 308 (1963)) and that courts owe "deference to Board expertise in applying statutory terms to particular facts". Hanna Mining Co. v. District 2, Marine Engineers, 382 U.S. 181, 190, 86 S.Ct. 327, 15 L.Ed.2d 254 (1965).

Where, as in the instant case, substantial evidence on the record as a whole supports the Board's findings, this court should not substitute its opinion for that of the Board.

---

9. *See, e. g., Pacific Intermountain Express, supra; Eastern Greyhound, supra;* New York City Omnibus Corp., 104 N.L.R.B. 579 (1953).

10. Since the Assistant Load Supervisors also pledge the Company's credit in exe-

cuting contracts for the sale and purchase of power with other utilities, they are statutory supervisors for this reason also. *Cf.* Central Maine Power Co., 151 N.L.R.B. 42 (1965).