**LABORERS AND HOD CARRIERS LOCAL NO. 341, affiliated with Laborers' International Union of North America, AFL–CIO, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 76–2279.

United States Court of Appeals, Ninth Circuit.

Oct. 6, 1977.

Fredric R. Dichter, of Birch, Jermain, Horton & Bittner, Anchorage, Alaska, for petitioner.

Charles M. Henderson, Seattle, Wash., for respondent.

ON PETITION FOR REVIEW AND CROSS–APPLICATION FOR ENFORCEMENT OF AN ORDER OF THE NATIONAL LABOR RELATIONS BOARD.

Before WRIGHT, CHOY and ANDERSON, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

## I. JURISDICTION

Laborers and Hod Carriers Local No. 341 (the Union) has petitioned for review of an order of the N.L.R.B. (the Board) reported at 223 NLRB No. 143. The Board has cross-petitioned for enforcement. The Board found [1] that the Union violated Sections 8(b)(1)(A) and 8(b)(2) of the National Labor Relations Act by arbitrarily causing Bannister-Joyce-Leonard (the Employer) to discharge one of its employees. The events occurred in Valdez, Alaska. This court has jurisdiction under 29 U.S.C. § 160(f), (e).

## II. ISSUES

Was there substantial evidence to support the Board's findings:

1. That Patrick Hurrell was an employee and not a supervisor;
2. That the Union caused Hurrell's discharge; and
3. That the Union thereby violated sections 8(b)(1)(A) and 8(b)(2)?

## III. SUMMARY OF FACTS

On April 2, 1976, Patrick J. Hurrell, the complainant before the Board, was dispatched by Jim Robison, the Union's field representative, to a job site in Valdez, Alas-

ka, at the request of Bob Morris, the Employer's yard foreman. Under the bargaining agreement, the Employer had "exclusive responsibility" to designate labor foremen, the job Hurrell was to perform. The Union agrees the dispatch was proper.

Hurrell has been "in and out of" Local 238 (Idaho-Washington) of the laborers' union since 1948. Hurrell's father has been business agent for the same local for thirty years. No evidence was introduced showing that Hurrell experienced trouble with Local 238. Hurrell transferred into Local 341, the petitioner herein, when he came to Alaska for this job in the spring of 1975.

As labor foreman, Hurrell supervised a crew of three full-time and two part-time laborers and worked with a crane operator and an oiler. His wage rate was seventy-five cents higher than the crew members. The crew thought one of them should have been foreman and objected to Hurrell's dispatch. On April 4, 1975, the crew's job steward, William Divins, notified Robison of the crew's objections; Robison told Divins the dispatch was proper. Divins informed the crew of the Union's position. On the evening of April 5th, the crew met without Hurrell and voted to hold a work stoppage, euphemistically termed a safety meeting. Divins did not participate in the vote. They asked Divins to request a union representative to come to the job site. Divins was unable to contact anyone, and the crew decided to postpone the work stoppage until a union representative came.

On April 6, Divins told M. T. Wilhite, the Employer's job superintendent, that a work stoppage would begin the following day. Divins said he was only conveying the crew's intentions; he explained that Hurrell was the problem, but did not mention his conversation with Robison. Wilhite asked whether the work stoppage would occur if Hurrell were discharged. Divins said no. Without informing Divins or the Union, Wilhite terminated Hurrell the same

---

1. The Board simply adopted the findings and order of the administrative law judge who tried the charge.

day, April 6, 1975. Hurrell returned to Idaho.

An unfair labor practice charge was filed by Hurrell on April 14, 1975. Two days later the Union received notice of the charge. On May 23, 1975, the Union's attorney wrote Hurrell telling him that the Union did not object to his employment. Hurrell was rehired after the Employer learned of the letter.

## IV. WAS HURRELL A SUPERVISOR UNDER SECTION 2(11)?

■ The Board's findings of fact are conclusive if supported by "substantial evidence on the record considered as a whole." 29 U.S.C. § 160(f). Similar deference ·is given to the Board's interpretations of labor relations statutes.

■ Subsections 8(b)(1)(A) and 8(b)(2) apply only to employees; supervisor and employee are mutually exclusive terms. Section 2(11) provides that:

> "The term 'supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct them,[2] or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment." 29 U.S.C. § 152(11).

The enumerated powers are disjunctive; the independent judgment criterion is conjunctive. *Ohio Power Co. v. N.L.R.B.*, 176 F.2d 385 (6th Cir. 1949), *cert. denied*, 338 U.S. 899, 70 S.Ct. 249, 94 L.Ed. 553 (1949). For example, the authority to promote in the interest of the employer renders a person a supervisor only if the person uses independent judgment in deciding whom to promote. The existence of authority is sufficient though failure to exercise may show the authority does not exist.

■ The line between merely routine exercises of authority and those requiring independent judgment is to be drawn by the Board; therefore, the courts usually defer to the Board's expertise. *Kaiser Engineers v. N. L. R. B.*, 538 F.2d 1379, 1383–84 (9th Cir. 1976). Job titles are unimportant. *Ross Porta-Plant, Inc. v. N. L. R. B.*, 404 F.2d 1180, 1182 (5th Cir. 1968). The legislative history indicates that the purpose of Congress was to allow employers to insure the loyalty of supervisors by granting them greater power over supervisors. *Meat Cutters Union Local 81 of A. M. C. & B. W. v. N. L. R. B.*, 147 U.S.App.D.C. 375, 381, 458 F.2d 794, 800 (1972).

■ The record fully supports the Board's conclusion. In assigning work, Hurrell relayed the yard foreman's instructions (Tr. 29, 1. 20–25) and routinely adjusted job duties according to the workers' requests (Tr. 32, 1. 16–23). He worked alongside the crew (Tr. 9, 1. 14) and kept "the work moving along" (Tr. 8, 1. 15–16). If suspension or discipline were necessary, Hurrell would summon the yard foreman (Tr. 31, 1. 2–9). Although Hurrell speculated that he had authority to recommend discipline (Tr. 32, 1. 7–9), he had never done so (Tr. 32, 1. 4–6), and the record indicates Hurrell's duty was to report facts, not "effectively recommend"[3] (Tr. 31). Griev-

---

**2.** Responsibility to direct means the supervisor has power and is answerable to management for its discharge. *N. L. R. B. v. Fullerton Publishing Company*, 283 F.2d 545, 549 (9th Cir. 1960).

**3.** *See N. L. R. B. v. Brown & Sharpe Mfg. Co.*, 169 F.2d 331, (1st Cir. 1948):

> "Considered thus we think it clear that the Board has not found that the Respondent's time-study men have authority to 'adjust' the 'grievances' of their fellows. The most that has been found so far is that they have authority to testify as expert witnesses in griev-

ance proceedings, and while an expert witness is called upon to use his independent judgment in determining what he shall say, it does not follow that his independent judgment is called upon to adjust a grievance. What is included in the meaning of the statutory language, we think, is the use of independent judgment in collecting, analyzing, evaluating and considering pertinent data for the purpose of determining the validity of a grievance, and it has been found that representatives of higher management, not time-

ances were to be reported to Hurrell, but adjusted by the yard foreman (Tr. 34, 1. 4). Hurrell had no authority to hire, fire (Tr. 8–9), or perform any other supervisory function.

Because this is a factual determination and job duties are never identical, the value of precedents is limited. *See Arizona Public Service Company v. N. L. R. B.*, 453 F.2d 228, 230 n. 4 (9th Cir. 1971). Viewed as a whole, the case law is consistent with the Board's determination. In *N. L. R. B. v. Security Guard Service, Inc.*, 384 F.2d 143 (5th Cir. 1967), the court upheld the Board's finding that sergeants who supervised other plant security guards were employees. Like Hurrell, the sergeants worked alongside other guards and related the captain's instructions to the guards. The court emphasized that a supervisor must be part of management[4] and termed the sergeants' occasional exercises of authority transitory and routine. In *Global Marine Development of California, Inc. v. N. L. R. B.*, 528 F.2d 92 (9th Cir. 1975), *cert. denied*, 429 U.S. 821, 97 S.Ct. 70, 50 L.Ed.2d 83 (1976), this court affirmed the Board's determination that assistant marine engineers were not supervisors; their responsibility for engine room operations was deemed routine.

Another Ninth Circuit case, *N. L. R. B. v. Doctors' Hospital of Modesto, Inc.*, 489 F.2d 772 (9th Cir. 1973), is instructive. The court held that registered nurses were employees even though they assigned and directed licensed vocational nurses and aides. Since vocational nurses assign and direct aides, a domino effect would result if the "managerial" criterion were disregarded:

"The leadman or straw boss may give minor orders or directives or supervise the work of others, but he is *not necessarily* a part of management and a 'supervisor' within the Act. The fact that nurses

are highly trained professionals and occasionally use independent judgment does *not necessarily* make them part of management or 'supervisors' under the Act." Id. at 776.[5]

*Precision Fabricators, Inc. v. N. L. R. B.*, 204 F.2d 567 (2d Cir. 1953) also supports the Board's determination. There the complainant assigned work to production employees pursuant to an order schedule given to him by the production manager. In concluding that these supervisory duties were routine, the court pointed out that the complainant spent 80% of his time operating a machine and that he only kept the workers busy. Id. at 568–69. Although the aforementioned cases indicate the Board's finding is correct, other cases support petitioner's challenge.

In *N. L. R. B. v. Gray Line Tours, Inc.*, 461 F.2d 763 (9th Cir. 1972) (per curiam), this court rejected the Board's finding that bus dispatchers were employees because the dispatchers were authorized to send home drivers who refused to drive a particular bus or who were improperly dressed. The court equated this with power to suspend, but never addressed the independent judgment criterion. *Accord, Eastern Greyhound Lines v. N. L. R. B.*, 337 F.2d 84 (6th Cir. 1964) ("The effective exercise of authority is nonetheless supervisory because it is a delegated authority." Id. at 87). Production foremen were found to be supervisors in *N. L. R. B. v. Edward G. Budd Mfg. Co.*, 169 F.2d 571, 575 (6th Cir. 1948), *cert. denied*, 335 U.S. 908, 69 S.Ct. 411, 93 L.Ed. 441 (1949), but the court was merely affirming the Board's finding.

Although the Board could have interpreted the facts differently, the Board's finding is supported by substantial evidence and therefore must be affirmed.

---

study men, have authority to do this." Id. at 334.

**4.** *See International Union of United Brewery, etc. v. N. L. R. B.*, 111 U.S.App.D.C. 383, 389, 298 F.2d 297, 303 (1961), *cert. denied*, 369 U.S. 843, 82 S.Ct. 875, 7 L.Ed.2d 847 (1962).

**5.** *But cf. Ohio Power Co. v. N. L. R. B.*, 176 F.2d 385, 387 (6th Cir. 1949), *cert. denied*, 338 U.S. 899, 70 S.Ct. 249, 9 L.Ed. 553 (1949) (favors literal construction of responsibility to direct.)

## V. DID THE UNION CAUSE HURRELL'S DISCHARGE?

The Union contends that it is not responsible for the actions of Divins, the job steward, because his conduct was neither authorized nor ratified. Common law agency principles govern determination of this factual issue; therefore, implied or apparent authority is sufficient. *N. L. R. B. v. Local Union No. 3, I. B. E. W.,* 467 F.2d 1158, 1159 (2d Cir. 1972). The Union argues that Divins was acting beyond his apparent authority in threatening a work stoppage since work stoppages were prohibited by the bargaining agreement. But Divins did have the authority to adjust grievances without Robison (Tr. 47, 1. 18–20; Tr. 48, 1. 7–9), and that was exactly what he was doing when he met with Wilhite. The threatened work stoppage was only a negotiating lever used by Divins to force a favorable resolution. Since Divins failed to convey the Union hierarchy's position that the dispatch was proper (Tr. 60, 1. 3–5) and Divins normally "cleared" laborers for work (Tr. 47, 1. 11–14), Wilhite could reasonably infer that Divins' threat was authorized even though Divins said he was only relating the crew's sentiments.

In *N. L. R. B. v. I. L. W. U., Local 10,* 283 F.2d 558, 565 (9th Cir. 1960), the court held that liability attaches to conduct within a job steward's general authority, even when the particular act is forbidden. In *I. L. W. U., Local 10,* the union dispatched a worker, but the job steward barred him from working because he was suing the union. The court reasoned that since the local created the power, the union is liable for its abuse. Id. at 566. Here, the job steward was appointed by the Union (Tr. 45, 1. 20–21), whereas in *I. L. W. U., Local 10* the steward was elected by the men and the union was powerless to terminate him.

The Union's inaction after Hurrell's discharge buttresses the Board's conclusion. It is true that Robison never disavowed his

approval of the dispatch and that neither Wilhite nor Divins informed him prior to Hurrell's discharge of the threat or the company's intentions. But Robison already knew the laborers objected to the dispatch (Tr. 55, 1. 6–15), and the day after the discharge Wilhite informed Robison that Hurrell had been "run off" the job by the crew (Tr. 97, 1. 11). Robison visited the job site April 24th, eight days after receiving notice of the unfair labor practice charge, but did not tell Wilhite or Morris the Union's position (Tr. 96, 1. 14–15). A month later the Union's official position was made known, and Hurrell was rehired. In analogous situations, courts have given great weight to a union's failure to repudiate a steward's conduct. See *N. L. R. B. v. I. B. B., etc., Local No. 83,* 321 F.2d 807, 811 (8th Cir. 1963); *N. L. R. B. v. Bulletin Co.,* 443 F.2d 863, 866 (3d Cir. 1971), *cert. denied,* 404 U.S. 1018, 92 S.Ct. 682, 30 L.Ed.2d 667 (1972).

The Union also contends that the true cause of Hurrell's discharge was the employer's hasty and unwarranted action. But the exigency was created by Divins' unexplained misrepresentation about the timing of the work stoppage and his nondisclosure of the Union's official position. The fact that Divins and Wilhite conversed informally does not negate causation. *N. L. R. B. v. St. Joe Paper Company,* 319 F.2d 819 (2d Cir. 1963) (suggests "but for" causation is sufficient). The Board's findings on agency and causation are correct.

## VI. DID THE UNION CONDUCT CONSTITUTE AN UNFAIR LABOR PRACTICE?

To establish liability, the Board relied on *Miranda Fuel Company, Inc.,* 140 NLRB 181 (1962), *enforcement denied,* 326 F.2d 172 (2d Cir. 1963). In *Miranda Fuel* the Board first held that a violation of a union's duty of fair representation is an unfair labor practice under 8(b)(1)(A) and 8(b)(2).[6] The duty

---

**6.** "(b) It shall be an unfair labor practice for a labor organization or its agents—

(1) *to restrain or coerce* (A) *employees in the* exercise of the rights guaranteed in section

157 of this title [§ 157 grants employees the right to organize, engage in concerted activities, etc.] . . .

of fair representation is the quid pro quo for the union's right to exclusive representation; it protects employees in the minority from arbitrary discrimination by the majority union. The Board held that if the foreseeable result of discrimination is encouragement of union membership, it must be supported by a legitimate purpose. Specific intent to encourage Union membership was not required to violate 8(b).[7]

The Union argues that specific intent is necessary. Though enforcement was denied, this court has adopted the *Miranda Fuel* doctrine:

> "It is an unfair labor practice in violation of § 8(b)(1)(A) and 8(b)(2) of the National Labor Relations Act for a bargaining representative to act in an unreasonable, arbitrary, or invidious manner in regard to an employee. . . . Similar in its facts and compelling in its argument, *Miranda Fuel* should, in our view, control the result here. In both cases, there was evidence of undue pressure from fellow employees and from the union shop steward. In both cases, the seniority reduction was sought without valid reason and hence was an arbitrary exercise of union power."
>
> *Kling v. N. L. R. B.*, 503 F.2d 1044, 1046 (9th Cir. 1975).

*Accord, N. L. R. B. v. General Truck Drivers, etc.*, 545 F.2d 1173 (9th Cir. 1976). Other circuits agree, and the Supreme Court has impliedly approved the *Miranda Fuel* doctrine. *Local 12, United Rubber, etc., Workers v. N. L. R. B.*, 368 F.2d 12 (5th Cir. 1966), *cert. denied*, 389 U.S. 837, 88 S.Ct. 53, 19 L.Ed.2d 99 (1967); *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). These cases dictate that the Board's finding of an unfair labor practice, under the facts, here, must be affirmed.

Since the dispatch was proper, the Union's actions through its steward violated the bargaining agreement. The Union failed to represent Hurrell fairly; its action was arbitrary. In defense the Union has not shown that it acted for a legitimate purpose. By wielding its power arbitrarily, the Union gives notice that its favor must be curried, thereby encouraging membership and unquestioned adherence to its policies. *See Local 357, International Brotherhood of Teamsters, etc., v. N. L. R. B.*, 365 U.S. 667, 675–78, 81 S.Ct. 835, 839–40, 6 L.Ed.2d 11 (1961); *Radio Officers' Union, etc., v. N. L. R. B.*, 347 U.S. 17, 46, 74 S.Ct. 323, 338–39, 98 L.Ed. 455 (1954).[8]

The petition for review is DENIED and the Board's order is ENFORCED.

---

(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) of this section [§ 158(a)(3) makes it an unfair labor practice for an employer to discriminate . . . in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization . . . .]"
29 U.S.C. § 158(b)(1), (2).

**7.** Literally read, the relevant sections do not require intent. *N. L. R. B. v. Miranda Fuel Co., Inc.*, 326 F.2d 172, 181 (2d Cir. 1963) (Friendly, J., dissenting).

**8.** The Board made no findings on the Union's intent, but the record does contain some evidence showing that the Union was improperly motivated (Tr. 49–50; Tr. 65, 1. 9–16).